CENTRAL KENTUCKY DRYING COM-
PANY, INC.; James Ritter Lumber
Company; and Roy Anderson Lumber
Company, Appellants,

v.

COMMONWEALTH of Kentucky, DE-
PARTMENT OF HOUSING, BUILD-
INGS, AND CONSTRUCTION; Ken-
tucky Board of Claims; and Leon F.
Simms, Jr., Appellees.

No. 92–SC–495–DG.

Supreme Court of Kentucky.

May 27, 1993.

Richard E. Plymale, Kathryn B. Ken-
drick, Brown, Todd & Heyburn, Lexington,
for Central Kentucky Drying Co., Inc.

Uhel O. Barrickman, Thomas L. Travis,
Barrickman, Richardson, Dickinson &
Ropp, Glasgow, for James Ritter Lumber
Co. and Roy Anderson Lumber Co.

Judith G. Walden, Frankfort, for Dept.
of Housing, Bldgs. and Const.

Chris Gorman, Atty. Gen., Frankfort, for
Kentucky Bd. of Claims.

James L. Mattingly, Mattingly, Simms &
Cocanougher, Springfield, for Leon F.
Simms, Jr.

SPAIN, Justice.

This controversy involves successive ap-
peals to the Marion Circuit Court, the
Court of Appeals, and this Court pursuant
to KRS 44.140 et seq., from administrative
awards by the Board of Claims in the four
consolidated claims. The issues before us
concern whether set-offs against damages
were properly allowed by the Board by
reason of amounts paid by a settling joint
tort-feasor, and whether the Board applied
the correct measure of damages for the
destruction of or a permanent injury to real
estate.

The facts giving rise to the property
damage claims are not really in dispute,
and were it not for the gravity of the
destruction, would read like a script for a
Mack Sennett comedy.

Appellee Leon F. Simms, Jr., (Simms) in
the fall of 1985 bought an 8.31 acre tract of

land in Lebanon, Marion County, Kentucky, improved by a wooden and metal tobacco warehouse building containing approximately 145,000 square feet. Simms was the successful bidder at the forced mortgage foreclosure auction sale, having bid $10,200.

Simms subsequently divided the building into a three-room office and a warehouse building, which he rented to appellant Central Kentucky Drying Company (Central Kentucky), who stored some of its lumber in the warehouse, and also sub-let lumber storage space to appellants James Ritter Lumber Company (Ritter) and Roy Anderson Lumber Company (Anderson).

Since the separate office building portion was dilapidated, Simms decided to have it removed. He hit upon the ingenious idea of offering it to the City of Lebanon Fire Department and the State Fire Marshal's office (a division of the Department of Housing, Buildings, and Construction of the Commonwealth) for destruction by burning as a joint firefighters' training exercise. Both agencies apparently readily agreed, whereupon the exercise was scheduled for Sunday, October 13, 1985. The State Fire Marshal's office was to supervise the operation and actually set the fire, and the Lebanon Fire Department was to extinguish what was predicted to be about a "twenty-minute burn."

As planned, personnel of the Fire Marshal's office set three fires simultaneously in the old office building. It was not planned, however, that within two and one-half to three minutes the fire would rage out of control and spread to the tobacco warehouse. Within the planned "twenty-minute burn," it completely destroyed the office building as well as the entire warehouse and its contents of some 200,000 board feet of lumber. The final touch of irony is that the complete fiasco was videotaped for posterity by the Fire Marshal's office.

When the smoke cleared (literally), Simms, Central Kentucky, Ritter, and Anderson sued the Commonwealth and the City of Lebanon in the Marion Circuit Court. The Commonwealth was dismissed from the action by reason of sovereign immunity, after which these consolidated claims were filed in the Board of Claims.

Before trial, the City of Lebanon settled with all the claimants for the total sum of $230,000. Of this amount, $95,000 was paid to Central Kentucky, $55,000 each was paid to Ritter and Anderson, and Simms received $25,000.

A Hearing Officer of the Board of Claims held a three-day hearing in May of 1988. In addition, the Board considered numerous depositions, exhibits, affidavits, and even viewed the videotape of the exercise. It entered its Opinion and Order, with the full board concurring, on June 30, 1989. The Board found no contributory negligence on the part of any claimant but found negligence on the part of both the State Fire Marshal, apportioned at 90% of the fault; and the Lebanon Fire Department, resulting in the remaining 10% of the fault.

With regard to damages, the Board found that the warehouse owner, Simms, was limited to his recent purchase price of $10,200 for destruction of the warehouse. He was also awarded $25,700 for loss of profits for the 1985 tobacco season and $2,400 loss of income from his lease with Central Kentucky, making his total award $38,300. Central Kentucky's total damages were found to be $108,096, Anderson's were found to be $111,762, and Ritter's $101,285.

The Board next found that KRS 44.070(1) was applicable and required it to offset or credit against the above amounts, all sums received by the claimants from the settlement with the City of Lebanon in the circuit court. The relevant portion of the statute provides:

> Furthermore, any damage claim awarded shall be reduced by the amount of payments received or right to receive payment from workers' compensation insurance, social security programs, unemployment insurance programs, medical, disability or life insurance programs or other federal or state or private program designed to supplement income or pay

claimant's expenses or damages incurred.

After deducting the credits or set-offs, the Board's net awards to the claimants were as follows:

- To Simms: $9,470 ($38,300 × 90% − $25,000)
- To Central Kentucky: $2,286 ($108,096 × 90% − $95,000)
- To Ritter and Anderson: $81,742 ($213,047 × 90% − $110,000)

All four claimants appealed the Board's decision to the Marion Circuit Court, insisting that the set-offs were improper or, at the very least, were improperly calculated. In addition, Simms argued that the Board erred in limiting his damages to his purchase price of the property.

The circuit court upheld the allowance of set-offs or credits, but agreed that it was improper to deduct the entire amount of the settlements from the Fire Marshal's 90% liability. Rather, it directed that each settlement would first be applied to the 10% liability of the City Fire Department, with the remainder then applied against the Fire Marshal's 90% liability.

Next, the circuit court found that the Board erred in limiting Simms' damages for destruction of his real estate improvements to the amount of his recent purchase price. In reliance upon *Island Creek Coal Company v. Rodgers*, Ky.App., 644 S.W.2d 339 (1982), the court held that the proper measure of permanent damage to real estate in Kentucky is the difference in the fair market value of the real estate just before and after the injury. Moreover, the court held that the Board was bound by the estimates of before and after values supplied by Simms' experts, since the Commonwealth offered no rebuttal evidence. Finally, the circuit court assessed the court costs against the Commonwealth.

All parties appealed to the Court of Appeals which, in a split decision, affirmed the circuit court as to the issues of set-off methodology and calculation of damages for Simms. The opinion was denominated as "Affirming in Part, Reversing in Part and Remanding," but so far as we can tell, the only issues wherein the Court of Appeals even slightly differed with the circuit court dealt with the lower court's direction that the Commonwealth pay the costs and with the Court of Appeals' holding that Ritter and Anderson's claims should be treated separately. As to the costs, there was not really a reversal, since the Court of Appeals simply declined to address the issue and suggested that upon remand, the circuit court should specify its calculation of costs and authority for assessing such against the Commonwealth, if it should again do so.

With regard to Ritter and Anderson's claims, it is true that the Board and the circuit court referred to their claims in the aggregate. Nevertheless, the Board clearly calculated and identified the amount of damages allowed to each separately and the circuit court specifically referred to "... the total award to each claimant ..." This being so, there is really no disagreement as to how the final award to each should be calculated.

■ Having granted discretionary review, we now hold that the Marion Circuit Court and the Court of Appeals were correct in their determination that the Board erred in limiting Simms' permanent damages for destruction of his real estate to his purchase price. While the purchase price in many circumstances may afford excellent evidence of the "before" market value of real estate, it rarely will have such probative value where, as here, the purchase was at a forced sale. By definition, "fair market value" represents the price that a willing seller will take and a willing buyer will pay for property, neither being under any compulsion to sell or buy. Further, *Island Creek Coal Co. v. Rodgers, supra,* at p. 345, correctly sets out that the measure of permanent damage to real estate in Kentucky is the difference in the fair market value of the real estate just before and after the injury. We further agree with both lower courts that upon remand, the Board should reassess Simms' damages for destruction of his real estate after determining the difference in its fair market value before and after the injury, based upon the evidence already in the record.

The expert testimony placed the "before value" at an amount not less than $115,000, nor more than $128,250, and its "after value" at from $15,000 to $20,750.

The Board's assessment of Simms' remaining items of damages and of the amount of damages for all other claimants has not been questioned on appeal.

■ Finally, we turn to the issue of whether set-offs were proper as against the Commonwealth's liability herein by reason of the voluntary settlement in the circuit court action by the City of Lebanon on behalf of its Fire Department.

In his dissenting opinion in the Court of Appeals, Judge Emberton correctly observes that KRS 44.070(1) allows a damage award against the Commonwealth to be reduced by the amount paid by enumerated sources, but that payments by a settling joint tort-feasor is not one of such enumerated sources. He further opines that we have long followed the general rule of statutory construction that enumeration of particular items excludes other items which are not specifically mentioned, citing *Louisville Water Co. v. Wells*, Ky.App., 664 S.W.2d 525 (1984). We agree. The maintenance of a liability insurance policy by the City of Lebanon with coverage for its fire department under no stretch of the imagination could be described as a "... federal or state or private program designed to supplement income or pay claimant's expenses or damages incurred."

In the absence of such a clear legislative mandate concerning set-offs or credits, we feel that the case of *Stratton v. Parker*, Ky., 793 S.W.2d 817 (1990), does indeed preclude the Commonwealth from receiving such a windfall. The opinion of the Court of Appeals attempts to distinguish the situation here from that in *Stratton* simply by observing that here we are dealing with the Commonwealth, not with private individuals. This might have been a valid distinction for the General Assembly to have employed if it had indeed written a clear statute requiring such a set-off of a settling joint tort-feasor's payment, but it is not otherwise a valid distinction. *Stratton* simply teaches that once an apportionment

of degree of fault has been made by the fact-finder as among the claimant, defendant, third-party defendant, and any person who has been released from liability, the extent of the liability of each is a several liability and is limited to the degree of fault apportioned to each. Each party is then "... liable for an amount equal to his degree of fault, no more and no less. He is not entitled to credit for any amount paid by a settling defendant who was found not to be at fault." *Supra* at p. 820.

In the present case, this means that the Commonwealth is liable for 90% of the damages found by the Board, "no more and no less" (except for the statutory maximums applicable to each claimant and to total claims from one negligent act). Thus, the $230,000 voluntarily paid by the insurer for the City of Lebanon in the circuit court suit is irrelevant to the liability of the Commonwealth on behalf of the Fire Marshal. Compromise settlements are just that, "a compromise" between the parties. At the time this settlement was reached, there had, of course, been no apportionment of fault by a fact-finder. It might have ultimately turned out that the Fire Department was found to be 90% at fault and the Fire Marshal only 10%. If so, the rule would be the same and the Commonwealth would not have been required to pay part of the City's liability, nor could the claimants get another bite of the apple because they had settled with the City for too little. Estimates by the parties of future apportionment of fault and damages by a fact-finder are anything but an exact science, and each side will lose some and win some.

If we were to hold otherwise in this case, there would be a real chilling effect on voluntary settlements of claims. Non-settling defendants would always get the benefit of set-offs from overpayments by settling defendants, but would never have to pay more than their apportioned share, even if there was an underpayment by the settling defendant.

Having decided that the set-offs were improper, we remand these claims to the Board for recomputation of the awards due

the claimants, including prorating, if necessary.

We mentioned above the action taken by the Court of Appeals with regard to the question of costs which was raised by the Commonwealth. As we read the Opinion and Order of the Marion Circuit Court, the only costs assessed by it against the Commonwealth were the court costs resulting from that proceeding in the circuit court and in no way involved the question of costs before the Board of Claims. Accordingly, we affirm such an assessment of costs as approved by the circuit court pursuant to KRS 453.010.

STEPHENS, C.J., and COMBS, REYNOLDS and WINTERSHEIMER, JJ., concur.

LAMBERT and LEIBSON, JJ., dissent by separate opinions.

LAMBERT, Justice, dissenting in part.

Respectfully, I suggest that the majority has misinterpreted KRS 44.070(1) and frustrated the intent of the General Assembly with respect to the right of the Commonwealth to receive a credit for sums paid by others to compensate a damaged party. The Board of Claims Act constitutes a limited waiver of the Commonwealth's right of sovereign immunity. Without the Act, there would be no liability on the Commonwealth for its negligent acts by virtue of Section 231 of the Constitution of Kentucky. As such, we have held that the Legislature may limit application of its waiver and impose such other restrictions as it sees fit upon the right of recovery against the Commonwealth. In *University of Kentucky v. Guynn*, Ky., 372 S.W.2d 414 (1963), this proposition was stated as follows:

"As a matter of grace, such a remedy may be granted, withdrawn or restricted

at the will of the Legislature." *Id.* at 416.

Recently, in *Kentucky Center for the Arts v. Berns*, Ky., 801 S.W.2d 327 (1991), we said:

"Where sovereign immunity exists by reason of the Constitution, the General Assembly may extend·or limit waiver as it sees fit...." *Id.* at 329.

In the first section of the Board of Claims Act, KRS 44.070(1), the General Assembly declared in the broadest possible terms as follows:

"Furthermore, any damage claim awarded shall be reduced by the amount of payments received or right to receive payment from workers' compensation insurance, social security programs, unemployment insurance programs, medical, disability or life insurance programs or other federal or state or private program designed to supplement income or pay claimant's expenses or damages incurred."

A reasonable reading of the foregoing leads unmistakably to the conclusion that the General Assembly intended to grant the Commonwealth a credit for sums paid by any other source in compensation for the damages. Such a reduction in the liability of the Commonwealth is perfectly consistent with the limitation on total damages allowable and the types of actions which may give rise to liability via the Board of Claims. Rather than depend upon the inapplicable rule of statutory construction found in *Louisville Water Co. v. Wells*, Ky.App., 664 S.W.2d 525 (1984)[1], we should rely on "rule one" of statutory construction as set forth in *Gateway Construction Company v. Wallbaum*, Ky., 356 S.W.2d 247 (1962), as follows:

"The best way in most cases to ascertain such intent or to determine the meaning of a statute is to look to the language used, but no intention must be

---

1. In my view, the rule of construction that the enumeration of particular things excludes other items which are not specifically mentioned is inapplicable here. In addition to the enumeration, KRS 44.070(1) contains a broad catch-all which grants the Commonwealth a credit for "other federal or state or private program de-

signed to supplement income or pay claimant's expenses or damages incurred." The terms "private program" and "damages incurred" are insurance and tort terms which clearly embrace settlement by a tortfeasor or its insurer. Moreover, the Act twice uses "insurance" and "programs" in conjunction with one another.

read into the statute not justified by the language. The primary rule is to ascertain the intention from the words employed in enacting the statute and not to guess what the Legislature may have intended but did not express. Resort must be had first to the words, which are decisive if they are clear. The words of the statute are to be given their usual, ordinary, and everyday meaning." (Citations omitted.) *Id.* at 249.

My views on this issue are well expressed in the Court of Appeals' majority opinion by Judge Stumbo as follows:

"KRS 44.070(1) clearly shows the legislative intent that no claimant be unjustly enriched at the commonwealth's expense. While we think the statute applies on its face, even if it did not, we think that we must allow a credit to the Department for the payments made by the Lebanon Fire Department. We are aware that this holding, at first blush, seems to violate the rule of *Stratton v. Parker*, Ky., 793 S.W.2d 817 (1990), by allowing a nonsettling tort-feasor to benefit from payments made by the settling one. *Stratton* involved an action between private parties, in which the settling tort-feasor was found not at fault at trial. Here, the nonsettling party is not a private party; it is the commonwealth, which can be sued only because the legislature has specifically allowed it. This being so, the limits of the commonwealth's liability have been specifically defined and the commonwealth has been statutorily granted a benefit not allowed private individuals. Just as the Board can only award an individual claimant a maximum of $100,000, it can receive a credit for payments made from other sources."

For the reasons stated, I dissent.

LEIBSON, Justice, dissenting.

Respectfully, I dissent.

The proper method for the Board of Claims to use in deciding this case would be to first decide if the State Department of Housing was negligent, and having so decided, to then decide the total damages each claimant sustained and then, in making the final award, deduct the previous payments in settlement made by the City Fire Department. This way the claimants would get paid exactly what they have coming to them, no more and no less. Under the Majority Opinion they are overcompensated.

We have gotten away from the age-old logic of the common law, which is to decide the plaintiff's total damages and award compensation accordingly, to a different system wherein a plaintiff, who settles with one defendant and proceeds against another, is either overcompensated or undercompensated depending on how the fact-finder later apportions fault. This is Russian Roulette, not the comparative negligence principle espoused in *Hilen v. Hays*, Ky., 673 S.W.2d 713 (1984). Under *Stratton v. Parker*, Ky., 793 S.W.2d 817 (1990), one side or the other will invariably get a windfall.

We should overrule *Stratton v. Parker* and go back to the fundamental fairness found in the principles of joint and several liability. We should hold that where the plaintiff settles with one defendant and the case goes to trial against the remaining defendant, the trier of fact should decide whether this defendant's negligence was a substantial contributing factor, and (if so found) decide what the total damages are. Then, on principles of equitable restitution, post-verdict the trial judge should deduct as a set-off amounts previously paid by any joint tortfeasor who has settled. When *Orr v. Coleman*, Ky., 455 S.W.2d 59 (1970) adopted a new approach, it was a new idea badly conceived without regard to preexisting law and how it would distort principles of just payment and compensation. *Nix v. Jordan*, Ky., 532 S.W.2d 762 (1975), followed the former principle of not applying apportionment to cases where the plaintiff proceeded to trial against only one defendant. We should apply it to the present situation.

On a different note: I agree that the Board erred in calculating damages for destruction of Simms' real estate improvements, and this issue was properly reversed and remanded back to the Board to

retry. But I disagree that on retrial the Board is limited to the evidence offered at the first trial. A retrial on damages contemplates a decision based on the evidence introduced at the retrial, not the last trial, including any new evidence offered on the issue.