Sonja Kay COLLINS, Individually and as Administratrix of the Estate of Eric Matthew Maggard, Appellant,

v.

COMMONWEALTH OF KENTUCKY NATURAL RESOURCES AND ENVIRONMENTAL PROTECTION CABINET, and Commonwealth of Kentucky, Board of Claims, Appellees.

No. 97–SC–0849–DG.

Supreme Court of Kentucky.

Oct. 21, 1999.

Rehearing Denied Feb. 24, 2000.

Stephen A. Sanders, Deborah A. Schmedemann, Appalachian Research & Defense, Fund of Kentucky, Inc., Prestonsburg, Tony Oppegard, Appalachian Research & Defense, Fund of Kentucky, Inc., Lexington, for Appellant.

Ronald W. Crawford, Fred A. Bee, Natural Resources and Environmental, Protection Cabinet, Office of Legal Services, Frankfort, Grey Vincent, Chairman, Commonwealth of Kentucky, Board of Claims, Frankfort, for Appellees.

LAMBERT, Chief Justice.

This Court granted discretionary review (CR 76.20) to consider whether damages may be recovered under the Board of Claims Act for injuries arising from the Natural Resources and Environmental Protection Cabinet's negligent inspection of a strip mine site. To answer this question, we must first review a key provision of the 1986 amendments to the Board of Claims Act, KRS 44.073(2), which provides recovery for injury caused by the negligent performance of ministerial acts. We must then determine whether inspection of a strip mine site by Cabinet employees constitutes a ministerial act, the negligent performance of which may support recovery under the Act, or whether it is a discretionary act, which provides no basis for recovery. If the award of damages is proper, we must then determine whether the statute was correctly applied.

The case arose as a consequence of a tragic accident. On April 8, 1987, 13–year–old Eric Matthew Maggard went biking in an area near his home with his brother and a friend. There was runoff from melting snow, and two to three inches of water flowed over parts of the road where the boys were riding. The water was high in a nearby creek, which ran underneath an access road to a strip mine and was covered by a 48–inch corrugated metal drainage culvert. The culvert was flooded as it was grossly undersized, contained several upright railroad ties inside it for reinforcement, and was clogged with debris. Eric slid off the road and into the creek on the upstream side of the flooded drainage culvert, where he drowned.

The culvert was part of the Terry R. Mullins strip mine site, for which the Cabinet had issued an operating permit. Although Cabinet employees had inspected the mine site repeatedly to ensure the location conformed to mandatory regulatory requirements, the culvert had never been physically inspected to insure that it was not obstructed or to assess its ability to handle peak runoff as required by regulation.

Sonja Kay Collins, Eric's mother, brought two claims against the Cabinet. In her capacity as administratrix of her son's estate, Mrs. Collins' filed a claim for his lost earnings. Individually, she filed a claim for loss of affection and companionship. Both claims alleged the Cabinet caused Eric's death by its negligent issuance of the strip mine permit, negligent inspections of the mine site, negligent issuance of a revised permit, and negligent failure to require the mine operator to remove the culvert after completion of the mining and reclamation operations.

The Board of Claims found a violation of the regulations for the mining operators to restrict the flow of water through the culvert by placing railroad ties inside it. *See* 405 KAR 1:120, Section 4(2). The Board also found the 48–inch culvert much too small to handle the peak runoff from a 10–year, 24–hour precipitation event as required by regulation. *See* 405 KAR 1:120,

Section (3)(2). Determining that Cabinet employees had a duty to inspect the mine site properly to ensure that the culvert was free-flowing and that this duty had been breached, the Board found the Cabinet negligent under the Act. In its ruling, the Board stated that even "minimal regulations" charged the Cabinet with the duty of performing a more thorough inspection than merely having inspectors drive over the culvert.

The Board found Eric's negligence contributed to the accident and apportioned 80 percent of the fault of the accident to Eric and 20 percent to the Cabinet. Damages were awarded to both Eric's estate and Mrs. Collins. Eric's lost earnings were assessed at $958,454. This amount was reduced to $100,000, the maximum amount of recovery allowed by statute for a single claim. *See* KRS 44.070(5). This amount was then reduced to $20,000 to reflect the apportionment of fault. The Board assessed Mrs. Collins' total loss at $25,000, which was reduced to $5,000 to reflect the apportionment of fault.

The Perry Circuit Court affirmed the Board's holding with respect to liability. However, the circuit court concluded the Board erred in its calculation of damages to Eric's estate. The circuit court corrected the perceived error by applying the 80 percent reduction for comparative fault to the total lost earnings figure of $958,454 rather than to the $100,000 statutory maximum. Through these calculations, the circuit court arrived at a figure of $180,000, which was then reduced to the $100,000 maximum recovery limit.

The Court of Appeals reversed the circuit court and remanded the case with directions that it be dismissed. In its decision, the court held the Cabinet could not be held legally liable as a matter of law. The court reasoned that the Cabinet's regulatory functions involve the exercise of reason, discretion, and judgment, as each mining permit application is different and may enter into "gray areas" requiring interpretation of statutes and regulations.

Thus, the court concluded, the acts at issue here were not purely ministerial as required for recovery under the Act. The court supported its position with *Commonwealth, Dept. of Banking and Securities v. Brown*, Ky., 605 S.W.2d 497 (1980), which held the Commonwealth cannot be liable under the Act for its employee's dereliction in the performance of duties that run to the public as a whole. For the following reasons, we now reverse.

■ Sovereign immunity is a doctrine of law created by section 231 of the Constitution of Kentucky. *Withers v. University of Kentucky*, Ky., 939 S.W.2d 340, 342 (1997); *Brown*, 605 S.W.2d at 498. Section 231 "grants the General Assembly the exclusive authority to decide when and under what conditions the Commonwealth will allow itself to be subjected to suit." *Brown* at 500. This Court recently reiterated this fundamental principle in *Commonwealth, Transportation Cabinet v. Roof*, Ky, 913 S.W.2d 322, 325 (1996), stating, "It is the province of the General Assembly to waive immunity, if at all, and only to the extent it sees fit."

The Board of Claims Act offers a limited waiver of sovereign immunity with regard to negligence claims filed with the Board. KRS 44.072. The first Board of Claims Act was enacted in 1946 and applied to personal injury or property damage arising from the negligent construction, reconstruction, maintenance or policing of highways by the Department of Highways. *Brown* at 498 (*citing* former KRS 176.290, renumbered as KRS 44.070 by Statute Reviser (1950)). In 1950, the Act was extended to provide compensation for injury caused by the negligence of the Commonwealth, any of its departments of agencies, or any of its agents or employees while acting within the scope of their employment. *Id.* (*citing* KRS 44.070). Recovery under the Act is limited to situations in which the alleged negligence was such that the claimant would be entitled to recover a judgment in an action at law if the Com-

monwealth were amenable to such an action. KRS 44.120.

The statutory language governing this action comes from KRS 44.073(2), one of the key provisions of the 1986 amendments to the Act. Two significant cases were decided shortly before the enactment of the 1986 amendments and are important to an understanding of the amendments. The first, *Commonwealth, Department of Banking and Securities v. Brown,* Ky., 605 S.W.2d 497 (1980), involved claims alleging the negligent regulation of two building and loan associations by the Department of Banking and Securities. The Court agreed that the Department had acted negligently, yet ruled for the Department, relying on KRS 44.120. The Court interpreted KRS 44.120 to incorporate the common law limitations on municipal tort liability, and concluded that "the Commonwealth has no common law liability for the malfeasance of its agents in the performance of obligations running to the public as a whole." *Id.* at 500.

The second case, *Gas Service Co. v. City of London,* Ky., 687 S.W.2d 144 (1985), involved a claim that the city of London had negligently installed and repaired a sewer line, contributing to a natural gas explosion. The Court reinstated the rule of sovereign immunity only for "the exercise of legislative or judicial or quasi-legislative or quasi-judicial functions." *Id.* at 149–150 (*quoting Haney v. City of Lexington,* Ky., 386 S.W.2d 738, 742 (1964)). The Court ruled against the city and remanded the case. In a concurring opinion, Justice Wintersheimer noted the distinction between discretionary and ministerial acts with regard to sovereign immunity:

In general it must be recognized that there are certain discretionary activities related to the formulation of public activity and public policy.

A public entity is not liable for the exercise of discretion when, in the face of competing demands, it determines how or whether to utilize or apply existing resources. Nothing in such a stat-

ute should exonerate the public entity for negligence arising out of acts or omissions of its employees in carrying out their ministerial function.

*Id.* at 151–152 (citations omitted).

■ The 1986 amendments clarified the law with regard to what types of conduct may form the basis for recovery under the Act. The first key provision of the 1986 amendments states:

The board of claims shall have primary and exclusive jurisdiction over all negligence claims for the negligent performance of ministerial acts against the Commonwealth, any of its cabinets, departments, bureaus or agencies, or any officers, agents, or employees thereof while acting within the scope of their employment by the Commonwealth, or any of its cabinets, departments, bureaus, or agencies.

KRS 44.073(2). This provision clearly establishes that any negligence claims against the Commonwealth or its subdivisions must be for the negligent performance of "ministerial acts." By implication, the negligent performance of non-ministerial, i.e., discretionary, acts cannot be a basis for recovery under the Act.

As explained in Justice Wintersheimer's concurrence in *Gas Service Co.,* 687 S.W.2d at 150, discretionary acts involve public policy decisions. Discretionary duties have been recently described in the following way:

Discretionary or judicial duties are such as necessarily require the exercise of reason in the adaptation of means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed. However, an act is not necessarily taken out of the class styled "min-

isterial" because the officer performing it is vested with a discretion respecting the means of method to be employed. *Franklin Co. v. Malone,* Ky., 957 S.W.2d 195, 201 (1997) (*quoting Upchurch v. Clinton Co.,* Ky., 330 S.W.2d 428 (1959)). As succinctly summarized in *Franklin Co.,* "The essence of a discretionary power is that the person or persons exercising it may choose which of several courses will be followed." *Id.*

To decide whether mine site inspection by Cabinet employees is ministerial or discretionary, it is necessary to determine whether the acts involve policy-making decisions and significant judgment, or are merely routine duties. The statutes governing coal mining in Kentucky are straightforward. KRS 350.020 states that the purpose of KRS Chapter 350 is to regulate and control coal mining operations so as to minimize any injurious effects on the Commonwealth's citizens and resources. To this end, the Cabinet is directed to enforce the law rigidly and to adopt whatever administrative regulations are necessary to accomplish the chapter's purposes. KRS 350.020. The Cabinet's surface coal mining inspectors are required to conduct inspections of coal mining operations and determine the existence of violations. KRS 350.050(5), KRS 350.130(1), KRS 350.465(3)(c). At the time of the accident, the acts required to be performed by the Cabinet with regard to the drainage culvert were specifically defined by regulation. 405 KAR 1:120, *et seq.* required that all access and haul roads be constructed according to certain requirements. The regulations specifically required that water control structures for the roads be designed with a discharge capacity capable of passing the peak runoff from a 10–year, 24–hour precipitation event. 405 KAR 1:120, Section 3(2). The regulations also required that all culverts and other drainage structures serving haul roads not be restricted or blocked in any manner that impedes drainage. 405 KAR 1:120, Section 4(2).

Inspecting drainage culverts to assure they conform to these regulations does not require any significant judgment, statutory interpretation, or policy-making decisions. Instead, these inspections require attention to specific details, such as whether the culvert is blocked and whether it is large enough to handle a specified amount of water. The regulations can be enforced in a routine, ministerial manner, and thus their negligent performance may be actionable under the Act.

The Cabinet, however, urges this Court to follow the holding of *Commonwealth, Department of Banking and Securities v. Brown,* Ky., 605 S.W.2d 497 (1980). In *Brown,* as noted above, the Court held that the Commonwealth was not liable under the Act for the negligence of state examiners who failed, during the course of an audit, to discover and report a loan association's true condition. The Court reasoned that when "the government entity is performing a self-imposed protective function ..., the individual citizen has no right to demand recourse against it though he is injured by its failure to efficiently perform such function." *Id.* at 499. In conclusion, the Court stated, "The pragmatic effect of our holding is that under the Board of Claims Act, the Commonwealth has no common law liability for the malfeasance of its agents in the performance of obligations running to the public as a whole." *Id.* at 500.

The Cabinet now contends that the administration and enforcement of surface coal mining laws likewise involve the performance of regulatory functions that run to the public as a whole, as indicated by KRS 350.020, and thus the there can be no liability arising from the derelict performance of these acts. *Brown,* however, was rendered prior to the enactment of the 1986 amendment that clearly waived sovereign immunity for the negligent performance of ministerial acts. Thus, *Brown* is not controlling.

■ We must next determine the appropriate computation of damages to be awarded to Eric's estate. In its "Findings of Fact," the Board found that Eric could have expected to earn $958,454 during a normal life span. In its "Conclusions of Law," the Board concluded that Eric would have been capable of earning over $900,000 during his lifetime. In its final order, however, the Board set the damages at the statutory maximum of $100,000, which was then reduced to $20,000 due to Eric's 80% comparative negligence. The circuit court corrected this damage award, which it perceived as erroneous, by applying the reduction for comparative negligence against the total amount of damages and then limiting recovery to the statutory maximums.

In *Truman v. Board of Claims*, Ky. App., 726 S.W.2d 312 (1986), a similar calculation of damages was addressed by the Court of Appeals. At that time, damages under the Act were limited to a maximum of $50,000. The parties stipulated that the damages were in excess of $100,000. The trial court first reduced the $100,000 stipulated damages to the statutory maximum of $50,000, then reduced this sum by 50% for comparative negligence. The Court of Appeals reversed and ordered the trial court to enter judgment for the statutory maximum of $50,000. In doing so, the court noted "the comparative negligence doctrine applies to damages rather than to limitation of recovery." We believe this is sound. Here, as in *Truman*, the Board erroneously reduced for comparative negligence from the statutory maximum rather than from the total damages.

Our view is strengthened by *Central Kentucky Drying v. Dept. of Housing*, Ky., 858 S.W.2d 165 (1993), where the issue was whether the Commonwealth, in a Board of Claims proceeding, was entitled to a set-off for sums paid by a joint tortfeasor. We analyzed and approved the dissenting opinion in the Court of Appeals as follows:

Judge Emberton correctly observes that KRS 44.070(1) allows a damage award against the Commonwealth to be reduced by the amount paid by enumerated sources, but that payments by a settling joint tort-feasor is not one of such enumerated sources. He further opines that we have long followed the general rule of statutory construction that enumeration of particular items excludes other items which are not specifically mentioned, citing *Louisville Water Co. v. Wells*, Ky.App., 664 S.W.2d 525 (1984).

*Id.* at 168. Here, as in *Central Kentucky Drying*, there is no legislative mandate that reduction for comparative negligence be from the statutory limit and to so hold would amount to judicial encroachment upon the legislative process. *See Gateway Construction Company v. Wallbaum*, Ky., 356 S.W.2d 247 (1962). In KRS 44.070(1), the General Assembly unmistakably identified those items which must be reduced from the statutory limit. It says nothing about a claimant's own negligence as an item for reduction just as it says nothing about payments from a joint tortfeasor as in *Central Kentucky Drying*. Thus, consistent with the Court of Appeals' holding in *Truman* and our analysis in *Central Kentucky Drying*, we conclude that the Court of Appeals erred when it reversed the circuit court and we hereby reinstate the final judgment of the circuit court.

We have not overlooked *Commonwealth, Transportation Cabinet, Department of Highways v. Roof*, Ky., 913 S.W.2d 322, 325–326 (1996). *Roof, supra*, is distinguishable from the instant case because it involved the reduction of a damage award by basic reparation benefits received as explicitly provided KRS 44.070(1). The instant case involves a reduction for comparative negligence as addressed in *Truman*. 726 S.W.2d at 313.

For the foregoing reasons, the judgment of the Court of Appeals is reversed, and the judgment of the circuit court is hereby reinstated in all respects.

GRAVES and WINTERSHEIMER, JJ., and Special Justice RONNIE M. SLONE, concur.

COOPER, J., dissents by separate opinion in which JOHNSTONE and KELLER, JJ., join.

STUMBO, J., not sitting.

COOPER, Justice, dissenting.

The majority opinion correctly notes that the General Assembly has the exclusive authority to waive sovereign immunity and to decide under what conditions the Commonwealth may be subjected to suit. To that end, KRS 44.072 provides *inter alia* as follows:

> The Commonwealth thereby waives the sovereign immunity defense only in the limited situations as herein set forth. It is further the intention of the General Assembly to otherwise expressly preserve the sovereign immunity of the Commonwealth....

This message is reiterated in KRS 44.073(11) and (12):

> (11) Except as otherwise provided by this chapter, nothing contained herein shall be construed to be a waiver of sovereign immunity or any other immunity or privilege maintained by the Commonwealth, its cabinets, departments, bureaus, and agencies and its officers, agents, and employees.

> (12) Except as otherwise specifically set forth by statute and in reference to subsection (11) of this section, no action for damages may be maintained in any court or forum against the Commonwealth....

KRS 44.073(2) and (8) identify the negligent performance of ministerial acts as the only type of conduct for which sovereign immunity is waived and the Board of Claims as the only forum for an action for negligence against the Commonwealth:

> (2) The Board of Claims shall have primary and exclusive jurisdiction over all negligence claims for the negligent performance of ministerial acts against the Commonwealth, any of its cabinets, departments, bureaus, or agencies, or any officers, agents, or employees thereof while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus, or agencies.

> (8) No action for negligence may be brought in any court or forum other than the Board of Claims against the Commonwealth, any of its cabinets, departments, bureaus, or agencies or any of its officers, agents, or employees while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments, bureaus, or agencies.

To summarize, the Commonwealth may be sued in the Board of Claims for the negligent performance of ministerial acts by its officers, agents, or employees; otherwise, sovereign immunity is retained.

The majority opinion assumes that ministerial acts and discretionary acts are the only types of governmental conduct which are implicated by the doctrine of sovereign immunity; and since the failure to properly inspect, discover, and report a regulatory violation is not a discretionary act, it must be a ministerial act which falls within the waiver provision of KRS 44.073(2). That assumption ignores KRS 44.073(13), which provides as follows:

> (13) The preservation of sovereign immunity referred to in subsections (11) and (12) of this section includes, but is not limited to, the following:

> (a) Discretionary acts or decisions;

> (b) Executive decisions;

> (c) Ministerial acts;

> (d) Actions in the performance of obligations running to the public as a whole;

> (e) Governmental performance of a self-imposed protective function to the public or citizens; and

> (f) Administrative acts.

Of the six types of conduct enumerated in KRS 44.073(13), only a ministerial act can be the subject of a negligence claim against the Commonwealth. With respect to the other five types of governmental conduct enumerated in KRS 44.073(13), sovereign immunity is retained. That includes (d) "[a]ctions in the performance of obligations running to the public as a whole," and (e) "[g]overnmental performance of a self-imposed protective function to the public or citizens." These two concepts were not conjured out of thin air when the General Assembly enacted KRS 44.073 in 1986. They were adopted verbatim from the opinion of this Court in *Commonwealth, Dept. of Banking and Sec. v. Brown*, Ky., 605 S.W.2d 497 (1980).

> The pragmatic effect of our holding is that under the Board of Claims Act, the Commonwealth has no common law liability for the malfeasance of its agents *in the performance of obligations running to the public as a whole.*

*Id.* at 500 (emphasis added).

> When the governmental entity is *performing a self-imposed protective function* as it was in the case at hand, the individual citizen has no right to demand recourse against it though he is injured by its failure to efficiently perform such function.

*Id.* at 499 (emphasis added).

Thus, contrary to the assertion in the majority opinion, KRS 44.073 did not abrogate our holding in *Brown*, but codified it. In *Brown*, the depositors in two failed building and loan associations sought to hold the Commonwealth liable for their financial losses because officers and employees of the Department of Banking and Securities had failed to discover and report the true financial conditions of the associations. Here, the plaintiff seeks to hold the Commonwealth liable for the death of her decedent because employees of the Natural Resources and Environmental Protection Cabinet failed to discover and report the failure of a strip mining company to comply with state regulations pertaining to culverts. Here, as in *Brown*, the claim is not that the Commonwealth's officers or employees caused the injury, but that they failed to prevent it by negligently performing a self-imposed protective function to inspect, discover, and report regulatory noncompliance, an obligation running to the public as a whole. There is no conceptual distinction between this cause of action and the cause of action in *Brown*. KRS 44.073 is much more specific than the former version of KRS 44.070 which was being interpreted in *Brown*. In fact, as noted above, KRS 44.073(13)(d) and (e) are codifications of our specific holdings in *Brown*. Presumably, the General Assembly will be surprised to learn that even when it has codified our interpretation of its statutes, we reserve the right to reject that codified interpretation if necessary to reach a desired result in a particular case.

I would affirm the Court of Appeals and order this action dismissed as barred by the plain language of KRS 44.072 and KRS 44.073(2), (8), (11), (12) and (13).

JOHNSTONE and KELLER, JJ., join this dissenting opinion.