COMMONWEALTH of Kentucky, TRANSPORTATION CABINET, DEPARTMENT OF HIGHWAYS, Appellant

v.

Shannon D. SEXTON; Commonwealth of Kentucky, Environmental and Public Protection Cabinet, Kentucky Board of Claims, Appellees.

No. 2006–SC–000454–DG.

Supreme Court of Kentucky.

June 19, 2008.

As Corrected Aug. 26, 2008.

**30**

Arthur Andrew Draut, Russell Harper Saunders, Weber & Rose, P.S.C., Louis-

ville, Paul Kevin Moore, General Counsel, Office of Legal Services, Frankfort, KY, Counsel for Appellant.

Daniel Michael Alvarez, Alvarez & Ansari, PLLC, Louisville, KY, Counsel for Appellee, Shannon D. Sexton.

George Mitchell Mattingly, Legal Counsel, Board of Claims, Frankfort, KY, Counsel for Appellee, Commonwealth of Kentucky, Environmental and Public Protection Cabinet, Kentucky Board of Claims.

Opinion of the Court by Justice MINTON.

## I. *INTRODUCTION.*

We granted discretionary review of a decision of the Court of Appeals that (1) created a new duty on the state's urban landowners owed to adjoining landowners to exercise ordinary care to prevent an unreasonable risk of harm arising from defective or unsound trees on the urban landowners' property and (2) held that administration of this new duty was ministerial in nature, meaning that the Commonwealth of Kentucky had waived sovereign immunity and could be held liable for damages allegedly caused by defective or unsound trees located on state-owned lands. We reverse the Court of Appeals and hold that the acts at issue in the case before us were not ministerial acts and that the Commonwealth has, therefore, not waived sovereign immunity.

## II. *FACTS.*

A dead tree standing on a vacant land fell onto Shannon Sexton's adjacent property in suburban Louisville, damaging Sexton's garage and destroying his vehicle. Upon investigation, Sexton discovered that the vacant land belonged to the Department of Highways, which is a division of

the Kentucky Transportation Cabinet. Sexton then filed an action against the state highway department in the Board of Claims.

### A. The Board of Claims Ruled for Sexton, and the Circuit Court Agreed.

A hearing officer for the Board of Claims found that the dead tree had been located somewhere between ten and twenty-five feet from Sexton's garage and that the state highway department had been doing road work approximately two hundred feet from the dead tree. According to Sexton, the dead tree was clearly visible from the construction site. Sexton was aware of the dead tree before it fell, but he had not reported it to anyone. After he discovered the ownership of the vacant land, Sexton reported another dead tree, which the highway department removed.

A highway department engineer testified before the Board of Claims hearing officer that no one from the highway department would have inspected the vacant lot adjacent to Sexton's property before the tree fell and that the highway department did not know of the tree's condition before it fell. The engineer further testified that she did not ask her employees whether they noticed the dead tree before it fell. She stated that maintenance workers for the highway department look at trees that may cause potential highway hazards to determine whether the trees should be removed.

The hearing officer noted the parties' stipulations: (1) "that the Cabinet is responsible for informing the maintenance department of dangerous or defective conditions on property owned by the Commonwealth" and (2) that "the maintenance department regularly locates and removes dead trees from property owned by the Commonwealth and ... did, in fact, re-move a dead tree located on the Commonwealth's property a short distance from the dead tree at issue in this case." The hearing officer then found that tree inspection and removal of dead trees from its property were ministerial acts for the highway department; that the highway department had constructive notice of the dead tree and negligently failed to remove it; and that the highway department was, therefore, liable to Sexton for damages totaling $7,875.00. The Board of Claims entered a Final Order accepting the hearing officer's recommended order, which the Jefferson Circuit Court affirmed.

### B. The Court of Appeals Created a New Rule of Law for Kentucky.

In a split decision, the Court of Appeals also affirmed, stating:

> We believe that rather than asking whether the Department's failure to act in this case was discretionary or ministerial, our inquiry should be whether or not the Department owed a duty of care to Sexton, and, if so, whether or not it breached that duty. This is so because, if the Department owed a duty of care to Sexton as an adjoining landowner in a populous area, then a breach of that duty would in fact be a violation of a defined or ministerial duty.

The Court of Appeals stated that Kentucky courts had previously embraced a traditional rule that landowners did not have a duty to fix natural occurrences on their land which might endanger or damage others outside the land. But the Court of Appeals then stated that it now recognized an urban landowner's "duty to others outside of his land to exercise reasonable care to prevent an unreasonable risk of harm arising from defective or unsound trees on the premises." It also held that administration of this new duty was ministerial and affirmed the decision in favor of Sexton, based on constructive no-

tice since "even a cursory inspection of the vacant lot should have revealed the presence of dead trees in the boundary line adjoining Sexton's property." Because we are concerned about the magnitude of this new duty and the characterization of inspection of trees on all state-owned land for soundness as a ministerial act, we granted discretionary review.

### III. *ANALYSIS.*

A. *Sovereign Immunity Has Not Been Waived Under the Board of Claims Act.*

This case involves an action seeking damages from the Commonwealth through one of its governmental agencies. Our courts have long recognized that the Commonwealth and its agencies and subdivisions are immune from suit, unless the Commonwealth has waived its immunity.[1] Section 231 of the Kentucky Constitution states, "The General Assembly may, by law, direct in what manner and in what courts suits may be brought against the Commonwealth." In other words, the legislature is vested with the power to decide when and how sovereign immunity may be waived. The Board of Claims Act (KRS 44.070, *et. seq.*) provides for a waiver of sovereign immunity for negligence in the performance of **ministerial** acts only.[2]

B. *Under the Facts of this Case, Tree Inspection and Dead Tree Removal on*

*Commonwealth–Owned Property Was Not a Ministerial Act.*

■ In our view, the Board of Claims and lower courts erroneously concluded that tree inspection on state-owned land was a ministerial act and, thus, erred in finding a waiver of sovereign immunity. The Board of Claims and the circuit court decided that the inspection of trees and removal of dead trees were ministerial acts largely based upon the highway department's admission that its maintenance department regularly locates and remedies dangerous defects on its property, which sometimes includes removing dead trees. The Court of Appeals stated that these acts were ministerial if the highway department had a well-defined duty to inspect trees for dangerous defects, despite lack of actual notice of such defects, and then imposed such a duty of inspection. Neither approach is consistent with our case law defining ministerial and discretionary duties.

■ In determining whether acts are ministerial or discretionary for purposes of determining whether the Commonwealth or one of its agencies may be held liable for negligent performance of that act, "it is necessary to determine whether the acts involve policy-making decisions and significant judgment, or are merely routine duties."[3] And the fact that an agency

1. *Yanero v. Davis*, 65 S.W.3d 510, 523–24 (Ky.2001). *See also Commonwealth v. Kelley*, 314 Ky. 581, 236 S.W.2d 695, 696 (1951) ("Immunity from suit has always been an attribute of state sovereignty.").

2. KRS 44.073(2) ("The Board of Claims shall have primary and exclusive jurisdiction over all negligence claims for the negligent performance of ministerial acts against the Commonwealth, any of its cabinets, departments, bureaus, or agencies, or any officers, agents, or employees thereof while acting within the scope of their employment by the Commonwealth or any of its cabinets, departments,

bureaus, or agencies."); *see also Collins v. Commonwealth of Kentucky Natural Resources and Environmental Protection Cabinet*, 10 S.W.3d 122, 125 (Ky.1999), construing KRS 44.073(2) ("This provision clearly establishes that any negligence claims against the Commonwealth or its subdivisions must be for the negligent performance of 'ministerial acts.' By implication, the negligent performance of non-ministerial, i.e., discretionary, acts cannot be a basis for recovery under the Act.").

3. *Collins*, 10 S.W.3d at 126. As *Collins* also concerned whether the Commonwealth itself (through one of its agencies) had waived sov-

occasionally or even regularly engages in a particular act does not necessarily mean that the act is a "routine duty" not involving "significant judgment, statutory interpretation, or policy-making decisions."[4] In particular, the fact that highway department employees in this case later removed the second dead tree from the vacant lot after receiving actual notice of its condition does not mean that inspection for dead trees in the absence of actual notice is a ministerial act. An agency's "routine duties" will typically be established by statutes or regulations that very clearly and specifically set forth those actions that the agency must take.[5] For example, in *Collins* we found that mine site inspection by the Natural Resources and Environmental Protection Cabinet was a ministerial act because several statutes and regulations established how inspection was to be performed and required attention to specific details.[6]

█ We recognize that in a different context (that of determining whether an individual government employee was individually liable or should be accorded qualified official immunity), we found the act of a law enforcement officer responding to a fellow officer's call for assistance to be a ministerial act, despite the lack of specific statutes or regulations detailing how to respond for such a call for assistance.[7] In some situations, an act may be ministerial even if that act is not specifically covered by applicable statutes, or administrative regulations. For example, though we need not definitively decide the issue in this case, if a state entity has actual notice of the existence of a dead or dangerous tree on property owned by that state entity, inspecting or removing the tree may be a ministerial act. Given the absence of a statute or regulation creating any duty owed by the highway department to the public in general or to adjoining landowners regarding defective or unsound trees and the lack of any other authority (including case law) imposing such a duty at the time of the incident, tree inspection and removal of dead trees on all highway department-owned lands was not a ministerial act.

We are unaware of any statutes or regulations specifically establishing a duty that the highway department inspect trees on its lands.[8] It does have a duty to "[i]nves-

ereign immunity, its test concerning whether an act is discretionary or ministerial applies. Obviously, cases involving whether an individual government employee can be held liable or has qualified official immunity involve different concerns (such as individual decisions), so their tests of what acts are ministerial or discretionary would be less applicable. *See, e.g., Yanero,* 65 S.W.3d at 522 ("an officer or employee is afforded no immunity from tort liability for the negligent performance of a ministerial act, i.e., one that requires only obedience to the orders of others, or when the officer's duty is absolute, certain, and imperative, involving merely execution of a specific act arising from fixed and designated facts.").

4. *Collins,* 10 S.W.3d at 126 (finding acts at issue to be routine duties or ministerial acts in light of specific regulations governing that act, such that those performing the act did not have to make significant judgment, interpret statutes, or make policy decisions).

5. *See id.* at 126 (finding act to be ministerial, in light of statutes and regulations clearly setting forth duties, in particular regulations requiring inspection of certain details relevant to case).

6. *Id.*

7. *See Jones v. Lathram,* 150 S.W.3d 50, 53 (Ky.2004).

8. The duties of the Department of Highways are set forth in KRS 176.050, which provides:

(1) The department shall:
(a) Investigate all problems relating to the construction and maintenance of roads in the state;

tigate all problems relating to the construction and maintenance of roads in the state,"[9] which may have led to some tree inspections where the trees could have potentially affected the construction and maintenance of roads. But despite relatively close proximity to a highway department construction site, the condition of the trees in the vacant lot owned by the Commonwealth here did not affect the construction or maintenance of roads in any manner.

Not only are there no statutes or regulations governing tree inspection in the absence of actual notice of unsound trees by the highway department, there was no existing Kentucky case law at the time of the property damage that imposed on the

(b) Examine all projects and ascertain the feasibility of all routes;
(c) Obtain information as to the proper type of road for any project;
(d) Examine all types of road materials which may be used in the construction or maintenance of any road to be constructed by the department or under its direction or supervision;
(e) Require the design plans for all road projects constructing a new route to identify, if at all feasible, one (1) or more publicly owned sites at least four (4) acres in size, along the proposed new route that will be used as waste sites during the construction phase of the project but that have the potential for a city, county, or other governmental entity to turn the site into an industrial park upon completion of the road project, regardless of whether the site currently has the infrastructure necessary to support an industrial park;
(f) Consult with all legislative bodies affected by a new road construction project during the design phase for the purpose of soliciting local government officials' preferences for the location of waste sites that could be turned into an industrial park;
(g) From time to time, examine and have examined and audited all of its books, papers and records;
(h) Cause to be made all necessary surveys in the establishment and construction of the system of public highways; all necessary

highway department a duty to inspect trees for soundness on its property. In fact, earlier decisions held that the highway department had no duty to inspect for dead trees even where the dead tree was located along a roadway. In *Commonwealth, Department of Highways v. Callebs*,[10] our predecessor-court reversed a trial court judgment vacating a Board of Claims order denying recovery from the highway department for a motorist killed by a dead tree falling on the highway, stating the highway department had no duty to inspect land along the roadway for dead trees:

In order to affirm the circuit court judgment, which set aside the order of the board, we would be required to hold

maps, prints, plans and specifications of all work to be done on the roads; estimates of costs; advertisement for bids; contracts for construction or maintenance; and all necessary forms in connection therewith; and
(i) Promulgate administrative regulations under KRS Chapter 13A for the care and maintenance of roads after they have been constructed.
(2) The department may publish bulletins containing useful information concerning the construction and maintenance of roads.
(3) An invoice or bill to be paid out of the road or bridge funds shall not be approved by the department for payment until it has been carefully examined by the department to ascertain if the bill or invoice is in every respect a proper and legitimate charge against the road or bridge funds. The commissioner may call before him any person who may have information respecting any bill or invoice.

In contrast to the apparent lack of specific duties regarding trees on the highway department in statutes or regulations, we note that county road engineers are specifically directed to "[r]emove trees or other obstacles from the right-of-way of any publicly dedicated road when the tree or other obstacles become a hazard to traffic." KRS 179.070(1)(j).

9. KRS 176.050(1)(a).

10. 381 S.W.2d 623 (Ky.1964).

that as a matter of law the Department of Highways had a duty to make a 'walk-around' inspection of the tree, involving perhaps an entry on private lands. We do not believe that such is the law.

We have been cited to no authority, nor has our research disclosed any, imposing by law so great an inspection duty on public highway authorities in an area such as here involved. Although the area may have been within the city limits of Barbourville, it was not truly urban in character, and in the near vicinity there were wooded hillsides along the road. In such an area we cannot say as a matter of law that the burden of a walk-around inspection of each tree near the highway (perhaps requiring the obtaining of entry permission from the abutting landowners) would not be unreasonable in comparison with the risk.[11] Although the Court in *Callebs* noted that the inspection required to remove the risk in that case might have required an entry onto private land, the Court, nonetheless, did not recognize or impose a duty to inspect trees on the Department's own lands for potential hazards.[12]

As the Court of Appeals stated in its opinion in this case, very few cases re-garding potential liability for damage caused by dead or otherwise defective trees have reached the appellate courts of this Commonwealth in recent decades.[13] Nonetheless, the existing case law at the time the tree fell did not impose on the highway department a duty to inspect trees for potential hazards to people or property. Therefore, especially in light of the lack of statutes or regulations specifically imposing such a duty, there was no authority requiring such regular, recurrent inspection of all trees located on highway department property that tree soundness inspection could fairly be characterized as a ministerial act by the highway department.

To the extent that the Department elected to conduct some tree inspections to promote public safety on the highways or even prevent damage to private property, this must have come about as a result of its employees' discretion to elect to perform such a function since this specific function was not required by any applicable law. Since this was clearly a discretionary act, the Commonwealth has not waived sovereign immunity for any alleged negligence in performing this act. So the judgment in favor of Sexton must be re-

---

11. *Id.* at 624.

12. Although not involving dead or defective trees, the highway department was similarly held not liable for failing to discover or remedy another dangerous natural condition (the loosening of a boulder along the highway) which resulted in a falling boulder injuring a motorist in *Shrader v. Commonwealth*, 309 Ky. 553, 218 S.W.2d 406 (1949) (involving similar, differently numbered statutes about the Board of Claims).

13. The Court of Appeals does mention that in 1984 it stated in dicta that perhaps traditional rules of non-liability for failing to discover and remedy a dangerous natural condition (specifically, a dead or dying tree) should be re-examined in *Schwalbach v. Forest Lawn Memorial Park*, 687 S.W.2d 551, 552 (Ky.App. 1985). However, as the Court of Appeals recognized here, *Schwalbach* directly concerned only damage to a neighbor's property from the "natural dropping of leaves and other debris" from a healthy tree and held that Kentucky adhered to the "Massachusetts rule," which provides that the injured neighbor had a right to cut back the offending tree but not to sue in court for damages. *See id.* at 552. Thus, the holding in *Schwalbach* certainly is not dispositive of the case at hand. Lest this opinion be misconstrued, however, we explicitly note that we intend for the Massachusetts rule to continue to apply to cases involving the natural dropping of leaves and other naturally occurring debris onto the property of another landowner.

versed with directions to enter judgment in favor of the Commonwealth, Transportation Cabinet, Department of Highways. Sexton's request for interest on the Board of Claims award is necessarily rendered moot.

C. *We Decline to Address Whether Traditional Rules Governing Liability for Damage to Neighbors' Property Caused by Dead or Otherwise Defective Trees Should be Abandoned.* .

Because we conclude that the performance of discretionary rather than ministerial acts is at issue here and that sovereign immunity has not been waived, it is not necessary for us to address whether a private landowner in an urban area is liable in tort for damages caused to a neighbor's property by dead or otherwise defective trees falling.[14] So we conclude that the Court of Appeals erred in imposing a previously unrecognized legal duty on urban landowners where it was not neces-

sary for the resolution of the case before it.

### IV.  *CONCLUSION.*

For the foregoing reasons, the Court of Appeals' decision is hereby reversed; and the matter is remanded to the Board of Claims with directions to enter judgment in favor of the Commonwealth of Kentucky, Transportation Cabinet, Department of Highways.

All sitting, except SCHRODER, J. All concur.

---

**14.** For discussion and references, *see* CHERYL M. BAILEY, ANNOTATION, TREE OR LIMB FALLS ONTO ADJOINING PRIVATE PROPERTY: PERSONAL INJURY AND PROPERTY DAMAGE LIABILITY, 54 A.L.R.4th 530 (1987 & June 2007 Supplement). The Court of Appeals frames the traditional rule as stating, "a possessor of land has no duty to remedy purely natural conditions on his land, even if they are dangerous to his neighbors."

> We note that some of the authorities that deal with a landowner's liability for dead or otherwise defective trees falling specifically concern a tree falling on a highway or other public roadway—a fact pattern that may implicate different duties or concerns than that in the present case dealing with damage to nearby private property. For example, Section 363 of the **Restatement (Second) of Torts (1965),** which is mentioned in the Court of Appeals opinion, states the traditional rule of no landowner liability for harm to persons outside the land caused by natural conditions on the land with an exception for harm caused to persons injured by defective trees while traveling on the highway in an urban area:

**§ 363   Natural Conditions**
(1) Except as stated in Subsection (2), neither a possessor of land, nor a vendor, lessor, or other transferor, is liable for physical harm caused to others outside of the land by a natural condition of the land.
(2) A possessor of land in an urban area is subject to liability to persons **using a public highway** for physical harm resulting from his failure to exercise reasonable care to prevent an unreasonable risk of harm arising from the condition of trees on the land near the highway.

(Emphasis added.)  *See also Lemon v. Edwards,* 344 S.W.2d 822 (Ky.1961) (holding that landowner was not liable for personal injury and property damage to motorist traveling in car hit by landowner's falling dead tree, as there was no duty to inspect rural land for defective trees posing danger to users of seldom-used adjoining road).