Dejuan STRATTON, Administrator for the Estate of Sabrina Felts, Appellant,

v.

COMMONWEALTH of Kentucky, Cabinet for Families and Children, Appellee.

No. 2003–SC–000580–DG.

Supreme Court of Kentucky.

Jan. 19, 2006.

Carl D. Frederick, C. Shawn Fox, Christopher A. Bates, Paul J. Hershberg, Seiller & Handmaker, LLP, Louisville, Counsel for Appellant.

Johann F. Herklotz, Brian C. Baugh, Cabinet for Health and Family Services, Office of Legal Services, Frankfort, Counsel for Appellee.

SCOTT, Justice.

This case comes to us on discretionary review of the Court of Appeals' opinion, which held the actions taken by agents of the Cabinet for Families and Children ("Cabinet") were discretionary in nature, and thus, rendered the Cabinet immune from claims of negligence under the Board of Claims Act. We originally granted review of this case to hopefully provide further guidance on the issue of governmental immunity, but after further review of the record, we have determined the actions in this case were simply discretionary and therefore, there was no waiver of immunity, and the decision of the Court of Appeals is affirmed.

## I. Facts

Sabrina Destiny Felts Stratton died May 21, 1994, from injuries inflicted by her mother's live-in boyfriend, Sherman Dejuan Davis. Davis has been found guilty of Murder and Criminal Abuse in the First Degree by the Jefferson Circuit Court.

The Cabinet for Families and Children was first notified of possible physical abuse of the deceased minor by her maternal grandmother, Deborah Thompson, on February 11, 1994. Ms. Thompson called Child Protective Services ("CPS"), a division of the Cabinet, stating Sabrina had injuries that suggested physical abuse.

That same day, Sabrina and her grandmother were interviewed by Amy Lombard, a case worker for CPS, and Detective Randy Meurer. CPS also investigated by speaking with Melissa Felts, Sabrina's mother, and Davis. Ms. Felts tried to explain away Sabrina's injuries by saying she frequently fell. When Davis was interviewed by Lombard, he denied any allegations of abuse. The doctor who examined Sabrina, however, observed her injuries were too severe to have resulted from innocent falls.

Based on her investigation, Lombard was able to substantiate the allegations of abuse, but could not ascertain the identity of the perpetrator. On February 16, 1994, Lombard filed a petition with the Jefferson Family Court, alleging physical abuse of

the child, naming Davis and Melissa Felts, Sabrina's mother, as the alleged perpetrators. The case was set for an emergency hearing on February 16, 1994.

The hearing was attended by Felts, Davis, Sabrina's natural father, Dejuan Stratton (Appellant herein), both sets of grandparents, the prosecutor, and Sabrina's guardian ad litem. At the hearing, Melissa Felts and Mr. Stratton agreed that he should be granted temporary custody of Sabrina while Ms. Felts attended court ordered parenting classes.

Having completed her investigation and secured a temporary change of custody, Lombard then transferred the case to what was known as an "ongoing" case worker. The "ongoing" case worker in Sabrina's case was Jeff Murphy. Mr. Murphy testified that his role was not to perform further investigation, but to ensure Ms. Felts attended the mandatory parenting classes, and to "set up services for the family."

When the parties returned to court on March 23, 1994, Sabrina's mother alleged it was Ms. Thompson who was hitting the child, which was mimicked in the statement of Sabrina's paternal grandmother to Mr. Murphy. Thompson was thereafter limited to supervised visitation once a month.

Mr. Murphy contacted Ms. Felts by phone several times to follow up on the case and met with Stratton and Sabrina in his office on April 4, 1994, followed by a home visit to Ms. Felts' house the following day.

On April 27, 1994, Judge Mary Corey, based upon the agreement of the parents, returned Sabrina to the custody of her mother. The court accordingly entered an order indicating a "disposition by agreement" which, while it included an admission of physical. abuse, stated "perpetrator unknown, although mother and father believe it was [the maternal grandmother]." Judge Corey's belief at the time was not inconsistent with Mr. Murphy's.

On May 15, 1994, a call was made to the abuse hotline by Sabrina's paternal grandmother, Jeanette Johnson.[1] She stated she had picked Sabrina up for a visit and observed noticeable facial injuries. Ms. Johnson also stated Sabrina explained away the bruises by claiming she had fallen. Jane Kemp, the CPS employee who took the report, concluded there was "no information that would indicate. anything but accidental injury."

Murphy had already scheduled a home visit for May 17th; he followed up on the phone call during his visit. Sabrina's mother explained Sabrina was playing with a neighbor's child and had fallen, causing the injuries. Sabrina confirmed her mother's account of the injury. Four days later, Sabrina died as a result of injuries later proven to have been inflicted by Davis.

Dejuan Stratton, administrator for the estate of Sabrina Felts, initiated an action against the Cabinet in the Board of Claims. Stratton alleged the Cabinet's negligence contributed to the death of Sabrina Felts. He argued that if the CPS workers had followed mandatory regulations requiring them to interview certain witnesses, they would have discovered and substantiated Davis as the abuser.

On May 11, 1999, the Cabinet moved to dismiss the case based on governmental immunity and failure to state a claim. The Board of Claims granted the Cabinet's motion, holding the interviews were not ministerial or discretionary, but rather fell within the categories set forth in KRS

1. Another call was made on May 18, 2004 relating to this same event.

44.073(13)(d) and (e): "[a]ctions in the performance of obligations running to the public as a whole" and "[g]overnmental performance of a self-imposed protective function to the public or citizens." The Board also found the Cabinet could not be liable under traditional negligence theories.

On Stratton's appeal, the Franklin Circuit Court held the Board of Claims had erred as to the applicable law, citing this Court's decision in *Collins v. Commonwealth of Kentucky Natural Resources and Environmental Protection Cabinet*, 10 S.W.3d 122 (Ky.1999), and rejecting the Board's interpretations of KRS 44.073(13). Under the Franklin Circuit Court's reading of *Collins*, the Cabinet's acts were ministerial, and governmental immunity was therefore waived.

The Cabinet appealed to the Court of Appeals, who reversed the Franklin Circuit Court, finding the addition of the terms "if possible" to Section Seven (7) of 905 KAR 1:330 made the Cabinet's acts discretionary. The Court of Appeals did not address KRS 44.073.

## II. Governmental Immunity

Governmental immunity is a doctrine of law created by section 231 of the Constitution of Kentucky. As an agency operating under the direction and control of the central state government, the Cabinet for Families and Children is entitled to the protections of governmental immunity unless that immunity has been explicitly waived. *See Withers v. University of Kentucky*, 939 S.W.2d 340 (Ky.1997).

■ The Board of Claims Act offers a limited waiver of governmental immunity with regard to negligence claims filed with the Board. The waiver extends only to negligence claims involving the performance of ministerial acts. KRS 44.073(2). A "ministerial" act is one in which the

agency has no discretion; non-ministerial, or discretionary, acts cannot be a basis for recovery under the Board of Claims Act.

■ To decide whether the case workers of the CPS division of the Cabinet for Families and Children were performing ministerial or discretionary acts in this case, it is necessary to determine whether the acts involved policy-making decisions and significant judgment, or were merely routine duties. *Collins v. Commonwealth of Kentucky Natural Resources and Environmental Protection Cabinet*, 10 S.W.3d 122, 126 (Ky.2000).

In *Collins*, the mother of a deceased child filed suit against the Natural Resources and Environmental Protection Cabinet, asserting negligence concerning issuance of mine permits, inspection, and failure to require removal of a culvert in which her child drowned. The child was riding his bike near a creek, which ran underneath an access road to a strip mine and was covered by a 48–inch corrugated metal drainage culvert. The boy slid off the road and into the creek on the upstream side of the flooded drainage culvert and drowned. **The upstream side of the creek had flooded because the drainage culvert was too small to handle the expected rain run-off.**

This Court noted the Kentucky statutes governing coal mining are straightforward.

The Cabinet's surface coal mining Inspectors are required to conduct inspections of coal mining operations and determine the existence of violations.... At the time of the accident, the acts required to be performed by the Cabinet with regard to the drainage culvert were specifically defined by regulation.... The regulations specifically required that water control structures for the roads be designed with a discharge capacity capable of passing the peak run-

off from a 10–year, 24–hour precipitation event.

*Id.*

The majority in *Collins* held inspecting drainage culverts to assure they conform to the regulations does not require any "significant judgment, statutory interpretation, or policy-making decisions" and the regulations could be enforced in a "routine, ministerial manner." In fact, it would only require mathematical engineering calculations to determine if a culvert met the noted "peak run off" standard. Thus, the Cabinet's negligent performance was actionable under the Board of Claims Act.

We believe the facts in this case are distinguishable from those rendering the Natural Resources and Environmental Protection Cabinet liable in *Collins*.

■ The applicable regulations in this case are found in section Seven (7) of 905 KAR 1:330 [2], which states in pertinent part:

> Information necessary for determining the validity of the report, and if valid, the existence of imminent danger and risk to the child shall be obtained during the investigation. Investigations shall entail face-to-face contact with the alleged victim. Victims, if of appropriate age, and if possible, parents or caretakers, appropriate household and family members, and alleged perpetrators shall be interviewed . . . .
>
> . . .
>
> (4) Collateral contacts shall be interviewed if the validity or severity of the report cannot be determined from the interviews. Collateral sources may include: (a) Officers of the Court; (b) School personnel; (c) Neighbors; (d) Medical personnel; (e) Law Enforce-

ment officers; and (f) Personnel of other agencies.

Looking first at the February 11th call by Sabrina's paternal grandmother, Ms. Thompson, it is clear the CPS case worker did interview the caller, the alleged victim, the victim's mother and the caregiver, Mr. Davis. From these interviews and further investigation, including a physical examination, the abuse was substantiated, though the perpetrator could not be identified.

The CPS employee who answered the May 1994 hotline phone call reported there was "no information that, would indicate anything but accidental injury" given by the caller. Mr. Murphy had already scheduled a home visit to the Felts' home before this phone call was placed, and followed through with his visit two days after the call was received. He observed Sabrina and spoke to her and her mother, who both indicated her injuries resulted from an accident occurring while Sabrina was playing with a neighbor's child.

The ministerial duties mandated by the regulations in this case were satisfied by the CPS case workers. As indicated above, all relevant parties were interviewed regarding the first allegation of abuse and the Cabinet was able to substantiate the allegations and file an action in the Jefferson County Family Court naming Melissa Felts and Mr. Davis as the possible perpetrators. Performing collateral interviews of individuals not mandated by the regulations regarding this abuse allegation would have been in the discretion of the case workers, and thus, their decisions as to these matters are not actionable.

During the course of the court case and continuing investigation by CPS, information was obtained tending to place blame on the maternal grandmother. No infor-

---

**2.** The Child Protective Services Regulations today (2005) are found in 922 KAR 1:330.

mation was ever conveyed identifying Mr. Davis as the abuser. The mother complied with the court orders and all parties to the case agreed to return Sabrina to her mother's custody.

The second call to the abuse hotline was not an official "abuse report" as an accidental excuse was given for the injuries, and the phone call alone did not trigger a duty by the Cabinet to investigate all caregivers. There were no alleged perpetrators in this report. Nonetheless, Mr. Murphy did follow up on this phone call during his scheduled home visit and determined, in his discretion, that Sabrina's injuries were accidentally inflicted by the neighbor child.

Unlike in *Collins*, where the applicable statutes mandate the water structures for the roads be designed in a certain way, and negligence by the Natural Resources and Environmental Protection Cabinet can be easily identified by the mere fact that the structures were not designed in the manner proscribed by statute, in this instance, the CPS case workers are investigating allegations of abuse. Such investigations do have certain mandated statutory requirements as to who shall be interviewed, etc., but they also involve discretionary decisions by the case workers, just as in police investigations. After performing their ministerial duties, the case workers must determine what action, if any, should be taken to resolve each claim—which in this case was to remove the child from a potentially dangerous environment—which they did, even though they could not identify the perpetrator. All such discretionary functions are protected by the doctrine of governmental immunity and do not fall under the waiver outlined by the Board of Claims Act.

For the above stated reasons, we affirm the decision of the Court of Appeals.

LAMBERT, C.J.; GRAVES, and WINTERSHEIMER, JJ., concur.

COOPER, JOHNSTONE and ROACH, JJ., concur in result only.