**N.B., Robin BAUMGARDT and Mark Baumgardt, Plaintiffs,**

v.

**WAUSAU SCHOOL DISTRICT BOARD OF EDUCATION, Paul Brusky, Mitchell King, Pamela Huston, State Farm Mutual Automobile Insurance Company, The Boller Group, Inc. and Marathon Savings Bank, Defendants.**

No. 06–C–487–C.

United States District Court,
W.D. Wisconsin.

Feb. 26, 2007.

Lawrence G. Albrecht, First, Albrecht & Blondis, S.C., Milwaukee, WI, for Plaintiffs Mark Baumgardt, Robin Baumgardt and N.B.

Nathan Fishbach, Lisa M. Arent, Whyte Hirschboeck Dudek S.C., Milwaukee, WI, for Defendants Wausau School District Board of Education, Paul Brusky and Pamela Huston.

John M. Moore, Bell, Gierhart & Moore, S.C., Madison, WI, Michele M. Ford, Crivello, Carlson & Mentkowski, Milwaukee, WI, for Defendant Mitchell King.

Claude Covelli, Boardman, Suhr, Curry & Field, Madison, WI, for Defendant State Farm Mutual Automobile Insurance Company.

Lori M. Lubinsky, Axley Brynelson, Madison, WI, for Defendant Community Insurance Corp. (Intervenor).

## OPINION AND ORDER

CRABB, District Judge.

Plaintiff N.B. was sexually assaulted numerous times by defendant Mitchell King, her high school basketball and golf coach, over the course of several months in 2004. In this action for damages brought under 42 U.S.C. § 1983, 20 U.S.C. § 1681 (Title IX of the Education Amendments of 1972) and state law, plaintiff N.B. and her parents allege that the principal, the athletic director and various members of the school board knew about King's abuse, but failed to report it or otherwise prevent it from continuing, in violation of the due process and equal protection clauses of the Constitution and Title IX, which prohibits sex discrimination in education. In addition, plaintiffs assert a negligence claim under state law.

Defendants Paul Brusky (the principal), Pamela Huston (the athletic director) and Wausau School District Board of Education have moved to dismiss plaintiff's constitutional claims as preempted by Title IX and her negligence claim as barred by the doctrine of governmental immunity. (Because Brusky, Huston and the school board are the only three defendants implicated by this motion, I will refer to them collectively as "defendants" for the remainder of the opinion.) Defendants also seek dismissal of a state law statutory claim, but this part of the motion will be denied as unnecessary because plaintiffs have explained in their brief that they did not intend to bring such a claim.

Plaintiffs amended their complaint after defendants filed their motion to dismiss,

triggering a new motion to dismiss by defendants. However, briefing on the new motion is unnecessary because none of the changes made in the amended complaint affect the analysis of the issues raised in the first motion. Although plaintiffs added a new party (defendant Huston), she is in precisely the same position as defendant Brusky with respect to each of the claims at issue in the motion.

Defendants' motion will be granted with respect to plaintiffs' constitutional claims. Although plaintiffs make a persuasive argument that Title IX does not preempt claims other than those relating to sex discrimination, a contrary conclusion is required by *Doe v. Smith,* 470 F.3d 331 (7th Cir.2006), in which the court of appeals dismissed both equal protection and due process claims as preempted by Title IX. Accordingly, I must dismiss all of plaintiffs' claims against defendants Brusky, Huston and the school board that were brought pursuant to 42 U.S.C. § 1983.

Defendants' motion will be denied with respect to plaintiffs' negligence claim. Public officials in Wisconsin are not immune from suit when they disregard a "ministerial" duty or a "known danger." Plaintiffs have alleged that defendants knew plaintiff N.B. was being abused by defendant King. At the pleading stage, this is sufficient to show that defendants had a ministerial duty to comply with the child abuse reporting requirements of Wis. Stat. § 48.981 or to take some other action to protect plaintiff from the known danger of further abuse.

Plaintiffs allege the following facts in their amended complaint.

## ALLEGATIONS OF FACT

In September 2003, plaintiff N.B. was a fourteen-year old freshman at Wausau West High School. Defendant Mitchell King, an employee of defendant Wausau School District Board of Education, was N.B.'s basketball and golf coach. N.B. was the sole female on the golf team.

In early 2004, King began telling N.B. that he had "sexual feelings" for her. Around the same time, the principal of the school, defendant Paul Brusky, expressed his concerns to defendant King that King was spending too much time with the female basketball players and exhibiting favoritism.

In March 2004, defendant King's sexual harassment of N.B. became more severe. After cupping her buttocks with his hand at a basketball game, he began calling her on the telephone and sending her text messages and emailing her, to tell her that he loved her and wanted to be with her. Later in the month, he rubbed her leg and kissed her cheek and neck while they were in his car.

In April 2004, King sexually assaulted N.B. twice before driving her home from golf practice. In one instance, he performed oral sex on her; in both instances he penetrated N.B. with his finger. During this same month, defendant Brusky met with King to discuss his "inappropriate" relationship with N.B.

King's sexual assaults and harassment of N.B. continued and worsened for several months. He sent her more graphic sexual messages. In May, the team stayed at a hotel for an overnight golf outing. King booked himself and N.B. in adjoining rooms in a separate wing from the remainder of the team. The school board was aware of these arrangements. That night, King raped N.B.

King sexually assaulted N.B. at least three other times in May and June: once in N.B.'s house and two other times before driving N.B. home from golf practice. After June, King kissed and inappropriately touched N.B. on dozens of other occasions

while on school premises, sometimes in public.

In July, the school board president saw defendant King acting "flirtatious[ly]" and "inappropriately" with plaintiff N.B. The president informed several school officials, including defendant Pamela Huston, who was the athletic director of Wausau West High School and the direct supervisor of defendant King.

In August, defendant Brusky met again with King to discuss his relationship with N.B. Brusky told Huston that he had received information about an "inappropriate relationship" between King and N.B.

In late 2004, N.B.'s family discovered the abuse and reported defendant King's actions to the police, after which he was charged with sexually assaulting N.B. He later pleaded guilty to the charge.

Members of the school board, defendant Brusky and defendant Huston were aware that defendant King was sexually harassing N.B. Neither Brusky, Huston nor the other school board members investigated King's misconduct, informed the school's Title IX representative or reported King to county or state authorities.

The school board failed to train its employees about mandatory reporting requirements and procedures for suspecting child abuse and sexual harassment. It authorized defendant King to be alone while on school premises and at school-sponsored events.

## OPINION

### A. Constitutional Claims: Title IX Preemption

█ Plaintiffs bring their Title IX claim against the school board and their equal protection and due process claims against all of the defendants (other than the insurance companies). Because the Constitution is not self-enforcing, plaintiffs seek to raise their constitutional claims pursuant to 42 U.S.C. § 1983.

Enacted in 1871, § 1983 creates a cause of action for damages against any "person" who violates another's federally protected rights while acting "under color of law." In *Maine v. Thiboutot*, 448 U.S. 1, 100 S.Ct. 2502, 65 L.Ed.2d 555 (1980), the Supreme Court held that § 1983 may be used to enforce not only constitutional rights but federal statutory rights as well, suggesting that § 1983 could authorize a lawsuit for almost any violation of federal law. To curb the potentially limitless scope of *Thiboutot*, the Supreme Court has developed a number of doctrines that restrict reliance on § 1983 even in cases in which it would literally apply. *E.g., Pennhurst State School & Hospital v. Halderman*, 451 U.S. 1, 28, 101 S.Ct. 1531, 67 L.Ed.2d 694 (1981) (federal statute cannot be enforced through § 1983 unless Congress intended to create private right of action).

One of these doctrines was set forth in *Middlesex County Sewerage Authority v. National Sea Clammers Association*, 453 U.S. 1, 20, 101 S.Ct. 2615, 69 L.Ed.2d 435 (1981): "When the remedial devices provided in a particular Act are sufficiently comprehensive, they may suffice to demonstrate congressional intent to preclude the remedy of suits under § 1983." In other words, if a plaintiff can obtain "comprehensive" relief under another statute, the court may assume that Congress did not intend to permit a parallel suit under § 1983. However, the question in *Sea Clammers* was a limited one: whether a plaintiff could bring a § 1983 action to enforce another statute that had its own enforcement mechanism, in that case the Clean Water Act and the Marine Protection, Research and Sanctuaries Act of 1972. Thus, under one interpretation, *Sea Clammers* simply recognizes that when Congress creates an express remedy for a

violation of a statute, plaintiffs must respect the mechanism for enforcement Congress established rather than circumvent it by trying to enforce the statute under § 1983.

In one instance, the Court extended the *Sea Clammers* rule to preempt § 1983 *constitutional* claims that cover the same ground as a federal statute. *Smith v. Robinson*, 468 U.S. 992, 1011–12, 104 S.Ct. 3457, 82 L.Ed.2d 746 (1984) (disability discrimination claim under equal protection clause preempted by Education of the Handicapped Act, which guaranteed disabled students right to "equal education opportunity"). However, after the Court decided *Robinson*, Congress acted quickly to overrule it by amending the Education of the Handicapped Act to provide expressly that parallel constitutional claims could be maintained alongside the statutory one. 20 U.S.C. § 1415(f). *See also Fontenot v. Louisiana Bd. of Elementary and Secondary Education*, 805 F.2d 1222, 1223 (5th Cir.1986) (noting that Congress acted "swiftly, decisively, and with uncharacteristic clarity to correct what it viewed as judicial misinterpretation of its intent"). Since *Robinson*, the Court has not found a constitutional claim to be preempted by a statute.

The question presented by this case is whether Title IX preempts plaintiff's constitutional claims against defendants Brusky, Huston and the school board. Under Title IX, "no person ... shall, on the basis of sex, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any education program or activity receiving Federal financial assistance." 20 U.S.C. § 1681(a). Title IX authorizes private causes of action, *Cannon v. University of Chicago*, 441 U.S. 677, 99 S.Ct. 1946, 60 L.Ed.2d 560 (1979), and, more specifically, it allows an award of money damages when the defendant has "actual notice" of

and is "deliberately indifferent" to discrimination on the basis of sex, *Gebser v. Lago Vista Independent School District*, 524 U.S. 274, 118 S.Ct. 1989, 141 L.Ed.2d 277 (1998), which may include sexual harassment, *e.g., id.; Franklin v. Gwinnett Public Schools*, 503 U.S. 60, 112 S.Ct. 1028, 117 L.Ed.2d 208 (1992). However, the statute is limited to suits against educational institutions (including school boards); individuals may not be sued under Title IX. *Smith v. Metropolitan School District, Perry Township*, 128 F.3d 1014, 1019 (7th Cir. 1997).

In some areas of the law, the Court of Appeals for the Seventh Circuit has been quite miserly in applying *Sea Clammers* and determining that Congress intended to preempt a constitutional claim brought pursuant to § 1983. In *Trigg v. Fort Wayne Community Schools*, 766 F.2d 299, 302 (7th Cir.1985), the court concluded that a sex discrimination claim brought under Title VII of the Civil Rights Act did not preempt a sex discrimination claim brought under the equal protection clause, even though Title VII prohibits at least as much conduct as the equal protection clause and the two claims are often treated as identical. *E.g., Hildebrandt v. Illinois Dept. of Natural Resources*, 347 F.3d 1014, 1036–37 (7th Cir.2003); *Williams v. Seniff*, 342 F.3d 774, 791 (7th Cir.2003); *Salvadori v. Franklin School District*, 293 F.3d 989, 997 (7th Cir.2002); *McPhaul v. Board of Commissioners of Madison County*, 226 F.3d 558, 566 n. 6 (7th Cir.2000); *Doe v. City of Belleville*, 119 F.3d 563, 596 (7th Cir.1997). Although the court decided *Trigg* at a time when Title VII permitted only equitable remedies, in rejecting preemption, the court did not rely on the differences in remedies provided under the two laws. In any event, the court has adhered to *Trigg*, even after the 1991 amendments to the Civil Rights Act, which expanded Title VII's remedies to include

compensatory and punitive damages. *Randolph v. IMBS, Inc.,* 368 F.3d 726, 732 (7th Cir.2004). *See also Annis v. County of Westchester, N.Y.,* 36 F.3d 251, 254 (2d Cir.1994) ("every circuit that has considered this issue has held that Title VII is not the exclusive remedy for discrimination claims against state or municipal employers, where those claims derive from violations of Constitutional rights").

Also, in *Discovery House, Inc. v. Consolidated City of Indianapolis,* 319 F.3d 277, 281 (7th Cir.2003), the court stated that the Americans with Disabilities Act would not preempt an equal protection claim. The court's only reasoning for this conclusion was that "[o]ur court ... has consistently declined to find that other similar statutes preclude § 1983 relief when the § 1983 claim is based directly on a constitutional violation, not a statutory one." The Court did not distinguish *Robinson* or otherwise discuss it.

A number of courts of appeals have concluded that Title IX has no preemptive effect on constitutional claims brought under § 1983, concluding either that constitutional claims should be treated differently from statutory claims or that Title IX's remedial scheme is not "sufficiently comprehensive" to suggest an intent by Congress to preempt claims brought pursuant to § 1983. *Crawford v. Davis,* 109 F.3d 1281, 1283–84 (8th Cir.1997); *Seamons v. Snow,* 84 F.3d 1226, 1233–34 (10th Cir. 1996); *Lillard v. Shelby County Board of Education,* 76 F.3d 716, 722–24 (6th Cir. 1996). However, the Court of Appeals for the Seventh Circuit has taken a different tack, concluding that Title IX does preempt constitutional claims in some instances. In fact, it appears that Title IX is the *only* instance in which the court of appeals has concluded that the statute preempts a constitutional claim.

The court first addressed the issue in *Waid v. Merrill Area Public Schools,* 91 F.3d 857 (7th Cir.1996). In that case, the plaintiff alleged that a public school had denied her a job because of her sex, in violation of both Title IX and the equal protection clause. Without acknowledging *Trigg's* treatment of Title VII as allowing both Title VII claims and § 1983 claims to go forward, the court concluded that the equal protection claim (brought pursuant to § 1983) could not proceed in conjunction with Title VII, stating: "Both statutes prohibit the same kind of conduct and provide compensatory and punitive damages as remedies for that conduct. *Sea Clammers* holds that this sort of overlap is intolerable." *Id.* at 862. *But see Nabozny v. Podlesny,* 92 F.3d 446 (7th Cir.1996) (ignoring *Waid* and allowing sex discrimination claim to proceed against school district under equal protection clause in case involving failure to protect student from harassment, without discussing applicability of Title IX).

In *Boulahanis v. Board of Regents,* 198 F.3d 633, 640 (7th Cir.1999), the court extended the holding in *Waid* to bar § 1983 sex discrimination claims against *individuals* when a Title IX claim is present, even though Title IX does not permit suits against individuals. The court stated: "In order to be comprehensive, that regime need not include possible claims against both the institution and individuals involved. The fact that individual claims are not available under Title IX means that Congress has chosen suits against institutions as the means of redressing such wrongs." *Id.* at 640.

A few years later, the court retreated from this seemingly blanket prohibition on bringing claims under both the equal protection clause and Title IX. In *Delgado v. Stegall,* 367 F.3d 668 (7th Cir.2004), the plaintiff was a public university student who alleged sexual harassment by her professor and brought sex discrimination

claims against the university under Title IX and against the professor under the equal protection clause and § 1983. The court held that Title IX did not preempt the plaintiff's equal protection claim against the professor.

The court began its analysis by reaffirming the conclusion that preemption was appropriate in some cases: "It is easy to see why Title IX might be thought to supplant section 1983 suits against the school officials responsible for the policy or practice that violates Title IX" because Title IX "furnishes all the relief that is necessary to rectify the discriminatory policies or practices of the school itself." *Id.* at 674. But this logic would not apply, the court reasoned, "in a case such as this, in which the malefactor is a teacher whose malefaction is not a policy or a practice for which the school could be held liable under Title IX." *Id.* In that case, "[t]he only possible effect of applying the sea-clammers doctrine ... would be to immunize [the harasser] from liability for his federal constitutional tort." *Id.* Thus, the court suggested a new standard: no preemption when the § 1983 claim is predicated on conduct that "is not a policy or a practice for which the school could be held liable under Title IX." In other words, when an individual's conduct can be imputed to the institution, Title IX preempts the equal protection claim. When preemption would leave a gap in liability, the plaintiff may pursue a § 1983 claim.

Finally, in *Doe v. Smith,* 470 F.3d 331 (7th Cir.2006), a case involving sexual abuse of a public school student, the court refined the holding in *Delgado.* The court stated unequivocally that "there is no parallel right of action under section 1983 against a federally funded education program where Title IX provides a sufficient private right of action for the allegedly unlawful police or practice." Without further analysis, the court affirmed the dis-

trict court's grant of summary judgment to the school district on the plaintiffs' § 1983 claims. *Id.* at 339. With respect to individual defendants, the court held that "suits against school officials implementing the challenged education practice or policy ... are shielded from liability." *Id.* It held, however, that there is no preemption for constitutional claims against the harasser.

Plaintiffs appears to concede that, after *Smith,* they cannot maintain a sex discrimination claim under § 1983 against defendants. However, they assert that they did not *bring* a constitutional sex discrimination claim against defendants. Rather, they have brought (1) a substantive due process claim, asserting N.B.'s right to bodily integrity and freedom from bodily restraint and unwanted touching, *Vacco v. Quill,* 521 U.S. 793, 807, 117 S.Ct. 2293, 138 L.Ed.2d 834 (1997); *Wudtke v. Davel,* 128 F.3d 1057, 1063 (7th Cir.1997); and (2) an equal protection claim under a "class of one" theory, *Village of Willowbrook v. Olech,* 528 U.S. 562, 120 S.Ct. 1073, 145 L.Ed.2d 1060 (2000). (Plaintiffs make fleeting references to claims that N.B. was deprived of a property interest in her education, *Goss v. Lopez,* 419 U.S. 565, 95 S.Ct. 729, 42 L.Ed.2d 725 (1975), and a liberty interest in her reputation, without due process of law, but their argument is limited to the claims enumerated above.)

As a matter of first impression, I would be inclined to agree with plaintiffs that Title IX does not preempt any constitutional claims other than those asserting discrimination on the basis of sex. After all, the test of *Sea Clammers* is whether the statute provides "comprehensive" relief for the type of claim the plaintiff seeks to bring. How can Title IX provide *any* relief, much less comprehensive relief, for violations of rights that the statute does not protect? *Smith v. Barton,* 914 F.2d

1330, 1335 (9th Cir.1990) (Rehabilitation Act does not "foreclose section 1983 claims that are unrelated to handicap discrimination").

For example, the court of appeals has emphasized repeatedly that not all sexual harassment is discrimination because of sex. *Rizzo v. Sheahan,* 266 F.3d 705 (7th Cir.2001) (although defendant's comments were both sexually explicit and severe, no Title VII liability because facts showed that harassment was based on animosity defendant felt for plaintiff's husband rather than her sex); *Shepherd v. Slater Steels Corp.,* 168 F.3d 998, 1009 (7th Cir.1999) ("[S]exual content or connotations of workplace harassment do not automatically render that conduct sex discrimination."). *See also Oncale v. Sundowner Offshore Services, Inc.,* 523 U.S. 75, 78, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998). In one case, the court went as far as to say that sexual harassment based solely on "personal attraction" is not discrimination because of sex. *Trautvetter v. Quick,* 916 F.2d 1140, 1150 (7th Cir.1990). And even assuming that sexual harassment is generally related to gender, not all physical abuse of students by teachers is sexual in nature.

What happens to the claim of a student who is a victim of severe harassment but who is unable to prove that the harassment or the school's failure to remedy it occurred because of her sex? Title IX could provide no relief to such a student. Of course, the due process clause does not require proof of a sex-based motive. Any sufficiently severe invasion of the student's person could be a potential due process violation regardless of motive, so long as the conduct was intentional. *Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986). Further, a school administrator or school board could be held liable under the due process clause for an employee's abuse of a student if the plaintiff could otherwise satisfy the standards for municipal or supervisory liability. *City of Canton v. Harris,* 489 U.S. 378, 109 S.Ct. 1197, 103 L.Ed.2d 412 (1989); *Monell v. Dept. of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Thus, the effect of preemption in that case would be the same as that condemned in *Delgado:* to immunize a defendant who may have violated a student's constitutional rights.

Further, a finding of no preemption for claims other than sex discrimination would be consistent with the Supreme Court's treatment of this issue. In *Robinson,* 468 U.S. at 1021, 104 S.Ct. 3457, the Court was careful to point out that its holding did not address a situation in which the statute's protections were "unavailable." It noted that, with respect to a due process claim, "the issue is not the same as that presented by a substantive equal protection claim" and that "unlike an independent equal protection claim, maintenance of an independent due process challenge to state procedures would not be inconsistent with the [statute's] comprehensive scheme." *Id.* at 1014 n. 17, 104 S.Ct. 3457.

Defendants do not address this reasoning but instead cite the court's statement in *Waid,* 91 F.3d at 862, that "Congress saw Title IX as the device for redressing *any grievance* arising from a violation of federal civil rights by an educational institution" (emphasis added). That statement goes far beyond what was required for the holding in the case, which involved claims of sex discrimination only. As a result, it is dictum and neither binding as precedent, *Wilder v. Apfel,* 153 F.3d 799, 803 (7th Cir.1998), nor persuasive because the court did not explain why Title IX's reach would extend so far.

The showstopper for plaintiff is not *Waid* but *Smith,* 470 F.3d 331. The facts in *Smith* are almost identical to this case. The plaintiff was a student who had been

sexually molested by his public school teacher. He brought claims against the school under both Title IX and § 1983. More important, his § 1983 claims included alleged violations of both the equal protection *and* due process clauses. *Id.* at 334. The district court dismissed all of the § 1983 claims. *Id.* Without making any distinction between the equal protection and due process claims, the court of appeals held: "We affirm summary judgment for the defendants on the [plaintiff's] section 1983 claims against the school district and school officials." *Id.* Thus, it appears that, under *Smith,* plaintiff cannot proceed on either his equal protection or due process claims against the school board or the principal. *See also Boulahanis,* 198 F.3d at 639 (dismissing without discussion procedural due process claim as preempted by Title IX).

It is with significant reluctance that I come to this conclusion. The holding in *Smith* is troubling because the substance of the court's discussion appears to relate to the equal protections claims only. *Id.* at 334 (stating that Title IX provided "adequate statutory recourse for the alleged *discrimination* ") (emphasis added); *id.* at 339 ("Title IX provides comprehensive recourse ... for the *discriminatory* practice or policy"); *id.* at 340 (emphasis added) ("Title IX provides sufficient statutory recourse for the *discrimination.*") (emphasis added). The court relied almost entirely on *Delgado,* a case that involved only sex discrimination claims. The court did not address the Supreme Court's distinction in *Robinson* between equal protection and due process claims. In fact, there was no independent discussion in *Smith* of the due process claims or any explanation how a sex discrimination statute could provide a comprehensive remedy for a due process violation.

It is surprising to find such discussion missing, particularly because the result in *Smith* represents a substantial extension of the law. It is worth noting how far we have come in interpreting Title IX's reach. The primary purpose of the law was to discourage discriminatory practices in education by withholding federal funds from institutions that engage in such practices. *Gebser,* 524 U.S. at 286, 118 S.Ct. 1989. It seems almost beyond belief to suggest that Congress intended a statute about gender equity in schools to provide the sole federal remedy for children abused by school officials.

It also seems contrary to the view expressed in *Delgado* that Title IX should not preempt claims for which there is otherwise no remedy. It may be that in *Smith* the court determined that Title IX preempts all constitutional claims that arise from the same conduct. This conclusion finds some support in *Waid,* 91 F.3d at 862, which cited with approval a case holding that "a plaintiff may not claim that a single set of facts leads to causes of action under both Title IX and § 1983." The problem with this reasoning is that a plaintiff drafting a complaint may not be able to tell how the facts will be found at summary judgment or at trial. As noted above, a plaintiff who was abused may not know at the pleading stage whether she will be able to prove that she was treated differently because of sex. However, under the theory stated in *Waid,* the plaintiff is stuck with Title IX regardless. Such an outcome seems inconsistent with *Soldal v. Cook County, Ill.,* 506 U.S. 56, 70–71, 113 S.Ct. 538, 121 L.Ed.2d 450 (1992), in which the Supreme Court stated: "Certain wrongs affect more than a single right and, accordingly, can implicate more than one of the Constitution's commands. Where such multiple violations are alleged, we are not in the habit of identifying as a preliminary matter the claim's 'dominant' character. Rather, we examine each constitutional provision in turn."

Regardless of the court of appeals' reasons for extending Title IX preemption to due process claims in *Smith,* I am bound by that case. Accordingly, I conclude that plaintiffs' claims against defendants Wausau School District Board of Education, Pamela Huston and Paul Brusky under 42 U.S.C. § 1983 must be dismissed. (Plaintiffs argue briefly that, even if N.B.'s constitutional claims are preempted, her parents' claims should remain. This argument is a nonstarter because *Smith,* like this case, involved claims brought by both the assault victim and his parents. Because the court did not distinguish between the child's and parent's claims, I may not do so either.)

### B. *Negligence Claim: Governmental Immunity*

Plaintiffs bring a claim for negligence against defendants Brusky, Huston and the school board for their failure to report defendant King's abuse of plaintiff. (Defendants also seek dismissal of a claim for negligence based on a failure to train and supervise. However, plaintiffs neither included this under their state law claims in their complaint nor mentioned it in their brief. Accordingly, I conclude that plaintiffs have not brought such a claim and this part of defendants' motion to dismiss will be denied as unnecessary.) Although in some circumstances the state of Wisconsin allows suits against public entities and officials, there are significant limitations. One of these is set forth in Wis. Stat. § 893.80(4), which provides immunity to "acts done in the exercise of legislative, quasi-legislative, judicial or quasi-judicial functions."

■ On its face the immunity granted under this section appears limited. *Holytz v. City of Milwaukee,* 17 Wis.2d 26, 39, 115 N.W.2d 618 (1962) (first setting forth test now codified in Wis. Stat. § 893.80(4) and noting "the rule is liability—the exception is immunity"). However, in a curious and expansive exercise of statutory construction, the Wisconsin courts have interpreted § 893.80(4) to mean that government officials are entitled to immunity for "any act that involves the exercise of discretion and judgment." *Lodl v. Progressive Northern Insurance Co.,* 2002 WI 71, ¶ 21, 253 Wis.2d 323, 646 N.W.2d 314 (2002). Currently, there are four narrow categories of non-discretionary acts to which immunity does not apply: "(1) ministerial duties imposed by law, (2) duties to address a known danger, (3) actions involving professional discretion, and (4) actions that are malicious, willful, and intentional." *Scott v. Savers Property and Casualty Insurance Co.,* 2003 WI 60, ¶ 16, 262 Wis.2d 127, 663 N.W.2d 715 (2003). Thus, it appears that immunity is now the rule in Wisconsin rather than the exception. *But see id.* at ¶ 58, 663 N.W.2d 715 (Abrahamson, C.J., concurring) (noting "jurisprudential chaos" surrounding § 893.80(4) and inviting reconsideration of its interpretation).

■ In this case, the question presented by the parties is whether the "ministerial" or "known danger" exception to immunity applies. Under the ministerial exception, there is no immunity when a duty "is absolute, certain and imperative, involving merely the performance of a specific task when the law imposes, prescribes, and defines the time, mode and occasion for its performance with such certainty that nothing remains for judgment or discretion." *Lister v. Board of Regents,* 72 Wis.2d 282, 301, 240 N.W.2d 610 (1976). The known danger exception is fairly self-explanatory and appears to be a subset of the ministerial exception: when a public official is aware of a dangerous condition that is "clear" and "absolute," his knowledge transforms a discretionary duty into a ministerial duty. *Cords v. Anderson,* 80 Wis.2d 525, 542, 259 N.W.2d 672, 680 (1977). *See also C.L. v. Olson,* 143 Wis.2d

701, 717, 422 N.W.2d 614, 620 (1988) (exception applies when "there exists a known present danger of such force that the time, mode and occasion for performance is evident with such certainty that nothing remains for the exercise of judgment and discretion").

One difference between the known danger exception and the more general exception for ministerial duties is that the former may apply even though the public official has some discretion in determining how to respond to the danger; a "known danger" requires a public official to "do something" to avert harm even if the necessary steps have not been spelled out in advance. *E.g. Cords,* 80 Wis.2d at 541–42, 259 N.W.2d at 679–80 (noting multiple options defendant could have taken to address known danger); *Losinski v. County of Trempealeau,* 946 F.2d 544, 546 (7th Cir.1991) (applying Wisconsin law and concluding that once police officer was aware that plaintiff was victim of domestic violence, he had ministerial duty to protect her in some way).

A discretionary act may be one that requires a public official to determine how a general policy should be carried out or how a general rule should be applied to a specific set of facts. *Lifer v. Raymond,* 80 Wis.2d 503, 259 N.W.2d 537 (1977). Even acts performed pursuant to a legal obligation may be discretionary because those acts may still allow room for judgment. *Scott,* 2003 WI 60, ¶ 28, 262 Wis.2d 127, 663 N.W.2d 715.

Examples of discretionary acts as determined by the Wisconsin courts include:

• a high school guidance counselor's giving of advice to a student regarding a college athletic scholarship; state law required the counselor to give advice but did not prescribe the advice to give; *Scott,* 2003 WI 60, ¶¶ 7, 28–29, 262 Wis.2d 127, 663 N.W.2d 715;

• a police officer's decision regarding whether and how to control traffic; *Lodl,* 2002 WI 71, ¶¶ 27–31, 253 Wis.2d 323, 646 N.W.2d 314;

• a parole officer's decision to grant a parolee permission to operate a motor vehicle despite his previous use of a vehicle to commit sexual assaults; *C.L.,* 143 Wis.2d at 724, 422 N.W.2d at 623;

• a determination by a prison official whether a shower area was adequately safe, as required by the safe-place statute; *Spencer v. County of Brown,* 215 Wis.2d 641, 573 N.W.2d 222 (Ct.App.1997).

Examples of duties found to be ministerial or triggered by a known danger include:

• a city's application for a court order to remove or destroy a dog that had been involved in 12 prior attacks; *Turner v. City of Milwaukee,* 193 Wis.2d 412, 535 N.W.2d 15 (Ct.App.1995);

• a park ranger's notification of a supervisor or placement of warning signs after learning of hazardous trail conditions; *Cords,* 80 Wis.2d at 541–42, 259 N.W.2d at 679–80;

• a dispatcher's taking action to remove a tree that had fallen across a road; *Domino v. Walworth County,* 118 Wis.2d 488, 490–93, 347 N.W.2d 917, 918–20 (Ct.App. 1984);

• a city's complying with statutory requirement to include certain factors in a "highspeed pursuit" policy; *Estate of Cavanaugh by Cavanaugh v. Andrade,* 202 Wis.2d 290, 301, 550 N.W.2d 103, 108 (1996);

• a police chief's complying with an administrative regulation requiring ambulances to include certain equipment; *Linville v. City of Janesville,* 174 Wis.2d 571, 585, 497 N.W.2d 465, 471 (Ct.App.1993).

The duty at issue in this case—to report abuse of children to authorities—more closely resembles the duties that Wisconsin courts in the past have found to be ministerial. One source of this duty is Wis. Stat. § 48.981:

> (2) Persons required to report. (a) Any of the following persons [including a "school teacher" and a "school administrator"] who has reasonable cause to suspect that a child seen by the person in the course of professional duties has been abused or neglected or who has reason to believe that a child seen by the person in the course of professional duties has been threatened with abuse or neglect and that abuse or neglect of the child will occur shall, except as provided under sub. (2m) [which applies to limited situations involving health care providers, not at issue in this case], report as provided in sub. (3):
>
> . . . .
>
> (2) Reports; investigation. (a) Referral of report. 1. A person required to report under sub. (2) shall immediately inform, by telephone or personally, the county department or, in a county having a population of 500,000 or more, the department or a licensed child welfare agency under contract with the department or the sheriff or city, village, or town police department of the facts and circumstances contributing to a suspicion of child abuse or neglect or of unborn child abuse or to a belief that abuse or neglect will occur.

With this law, "[t]he Wisconsin legislature ... has specifically imposed on school officials an affirmative duty to protect students from actual or threatened abuse by reporting such conduct to the authorities." *Kendrick v. East Delavan Baptist Church,* 886 F.Supp. 1465, 1472–73 (E.D.Wis.1995).

In arguing that their duties under the statute were discretionary, defendants focus on § 48.981(2), which provides the level of certainty that a school administrator must have before his duty to report is triggered. Defendants cite a number of cases that have held that a failure to investigate or otherwise discover abuse involves discretionary acts entitled to immunity. *E.g., C.L.,* 143 Wis.2d at 724, 422 N.W.2d at 623; *Gordon ex rel. Gordon v. Ottumwa Community School District,* 115 F.Supp.2d 1077, 1085–86 (S.D.Iowa 2000) ("hiring, retention and supervision" of employee that assaulted student were discretionary acts for purpose of immunity); *Davis v. DeKalb County School District,* 996 F.Supp. 1478, 1484–85 (N.D.Ga.1998) (immunity for discretionary acts appropriate on plaintiff's claim that defendant "should have exercised better judgment when investigating and evaluating [possibility of abuse] and should have discovered ... molestation of Plaintiff"). *See also Stratton v. Commonwealth,* 182 S.W.3d 516 (Ky.2006) (investigation into allegations of child abuse involves discretionary acts).

The flaw in defendants' argument is that plaintiffs' negligence claim is not premised on defendants' failure to investigate or detect abuse. Rather, plaintiffs allege that defendants *knew* of the abuse but failed to report it nevertheless. Although the determination that a child is being abused involves discretionary acts, once that determination is made, a school administrator must act. *Cf. Chart v. Dvorak,* 57 Wis.2d 92, 102, 203 N.W.2d 673 (1973) (decision to post road sign was discretionary, but once this decision was made, defendant had ministerial duty to post sign in manner that complied with the law). Under Wis. Stat. § 48.981(3), once a school administrator is aware of abuse, all discretion is stripped away: a school administrator "shall" report abuse of which he is aware to authorities. *Turner,* 193 Wis.2d at 421, 535 N.W.2d at 18 (considering man-

datory nature of law in concluding that it imposed ministerial duty). In other words, the duty to report becomes "absolute, certain and imperative." *Lister*, 72 Wis.2d at 301, 240 N.W.2d at 622. Further, the statute "prescribes" and "defines" the time ("immediately") and mode ("by telephone or personally") of performance of the duty. The mandate could not be much clearer or more specific.

Under these circumstances, I see no way to distinguish the nature of the duty imposed in this case from those imposed in *Cavanaugh* and *Linville*, in which the courts concluded the defendants were not entitled to immunity when they had failed to comply with explicit, unambiguous directions in a statute and a regulation. *See also Meagher v. Quick*, 264 Ga.App. 639, 594 S.E.2d 182, 186 (2003) (not discretionary to file statutorily required report after investigating child abuse). Further, the purpose of immunity is to allow public officials the breathing space they need to "weig[h] social, political and economic considerations" in important decisions without the threat of a lawsuit. *Caraher v. City of Menomonie*, 2002 WI App 184, ¶ 11, 256 Wis.2d 605, 649 N.W.2d 344. It is difficult to think of any legitimate political, social or economic considerations that a school administrator would need to weigh in determining whether he should take steps to protect a child from abuse once he becomes aware of that abuse.

Defendants say repeatedly in their briefs that plaintiffs do not allege in their complaint that defendants actually *saw* any abuse of plaintiff N.B. by defendant King. That may be so, but it has almost no relevance to determining whether defendants are entitled to immunity. Wis. Stat. § 48.981 does not require eye witness testimony before imposing a duty to report but only "reasonable cause to suspect." Plaintiffs allege that defendants had "actual knowledge" of abuse, which is more than

enough to satisfy that standard. I agree with plaintiffs that they were not required to allege more than this under the liberal pleading requirements of Fed.R.Civ.P. 8. *Hefferman v. Bass*, 467 F.3d 596, 601 (7th Cir.2006) (applying federal pleading standards to state law claim). Plaintiffs do not have to explain in their complaint how defendants knew plaintiff N.B. was being abused or otherwise allege the details of their claim. It was sufficient that plaintiffs gave defendants notice of the claim and that plaintiffs' allegations are consistent with facts that would enable plaintiffs to prevail. *Simpson v. Nickel*, 450 F.3d 303, 306 (7th Cir.2006) ("Facts need not be 'established' or even alleged (fact-pleading is unnecessary); a plaintiff receives the benefit of any fact that could be established later consistent with the complaint's allegations.")

However, I emphasize that plaintiffs will be required at a later stage to come forward with evidence showing that defendants *actually* believed or suspected that plaintiff N.B. was suffering from or had been threatened with abuse. It will not be enough for plaintiffs to show that defendants *should have* discovered the abuse, because that returns defendants' duty to one that requires discretion and judgment.

The analysis is much the same under the "known danger" exception; the only difference is the level of certainty requiring action. Defendants must have been aware of a danger that was "clear" and "absolute"; simply suspecting that a danger might exist is not enough. *Cords*, 80 Wis.2d at 542, 259 N.W.2d at 680. Again, plaintiffs satisfy this standard by alleging that defendants knew plaintiff N.B. was being abused. Defendants cite a number of cases in which Wisconsin courts determined that the defendants were not sufficiently aware of the danger to overcome immunity. *E.g., Barillari v. City of Mil-*

*waukee*, 194 Wis.2d 247, 261, 533 N.W.2d 759, 764 (1995); *C.L.*, 143 Wis.2d at 723, 422 N.W.2d at 622. However, defendants' reliance on these cases is premature. At this stage, I must assume that defendants *were* sufficiently aware of the danger to trigger a ministerial duty because plaintiffs have so alleged. Further, defendants do not suggest that sexual assault is an insufficiently serious danger to trigger the known danger exception.

It is not clear whether plaintiffs gain anything by relying on the known danger exception. As noted above, in the context of this case, it appears that the only difference between this exception and the more general one for ministerial duties is that, for the known danger exception, plaintiffs must prove a higher degree of certainty that defendants were aware of abuse. But regardless whether this theory will ultimately provide a basis for liability, the only question presented by defendants' motion is whether the allegations of plaintiffs' complaint are sufficient at this stage to overcome an assertion of immunity. Because I have concluded that it is, defendants' motion to dismiss will be denied with respect to plaintiffs' negligence claim.

## ORDER

IT IS ORDERED that

1. The motion to dismiss filed by defendants Wausau School District Board of Education and Paul J. Brusky (dkt.# 10) is DENIED AS MOOT.

2. The motion to dismiss filed by defendants Wausau School District Board of Education, Paul J. Brusky and Pamela Huston (dkt.# 50) is GRANTED with respect to plaintiffs N.B.'s, Robin Baumgardt's and Mark Baumgardt's claims brought pursuant to 42 U.S.C. § 1983. These claims are DISMISSED with respect to these three defendants only.

3. Defendants' motion to dismiss (dkt.# 50) is DENIED with respect to plaintiffs' state law negligence claim.

4. Defendants' motion to dismiss (dkt.# 50) is DENIED AS UNNECESSARY with respect to a state statutory claim and common law negligence claim for failure to train and supervise because plaintiffs did not include these claims in their amended complaint.

5. The stay of discovery granted in the February 15, 2007 order pending resolution of this motion is LIFTED.