**ENERGY ENVIRONMENT CABINET, DIVISION OF FORESTRY, Commonwealth of Kentucky, Appellant,**

v.

**Nickie D. ROBINSON; Anna Robinson; and Kentucky Board of Claims, Appellees.**

**No. 2011–CA–000139–MR.**

Court of Appeals of Kentucky.

March 16, 2012.

---

Stephen P. Thompson, Frankfort, KY, for appellant.

Melanie Horton Pikeville, KY, for appellees Nickie And Anna Robinson.

No Brief Filed for Appellee the Board of Claims.

Before COMBS, KELLER, and STUMBO, Judges.

## OPINION

KELLER, Judge:

The Energy & Environment Cabinet, Division of Forestry of the Commonwealth of Kentucky (the Division), appeals from the circuit court's opinion and judgment remanding this matter to the Board of Claims (the Board) for additional proceedings. On appeal, the Division argues that the Board correctly determined that the Division's acts were discretionary, thus entitling the Division to immunity. In the alternative, the Division argues that, if its acts were ministerial, the Board determined that the Division was not negligent, negating the need for the circuit court's remand. Nickie Robinson (Robinson) and Anna Robinson, his mother, argue that, because the acts complained of were ministerial, the Board was required to address whether they were performed negligently. The Division's argument to the contrary notwithstanding, Robinson asserts that the Board did not address the Division's negligence.[1] Having reviewed the record, we agree that the Division's actions were discretionary; therefore, we reverse and remand for reinstatement of the Board's final order.

## FACTS

The following facts are not in dispute. On or about November 26, 2005, someone burned a shed behind the residence of Patricia Martin. The Division was notified that there was a possible forest fire that afternoon and the district forester flew over the area to confirm that the fire (hereinafter referred to as the Martin fire) was, in fact, a forest fire. He did so and, because there were other forest fires in the area, he could not get a crew to the Martin fire site until the next day. At around noon of November 27, 2005, Ronnie Stiltner (Stiltner), a forest technician, ar-

---

1. We note that the Board adopted the hearing officer's recommended order. In that order, the hearing officer only addressed negligence in his conclusion, stating that, "The Respondent was not negligent in the performance of any ministerial act for which immunity has been waived." The hearing officer did not make any findings of fact regarding negligence, nor did he explain why he reached this conclusion. Because we are disposing of this matter based on the issue of immunity, we do not address whether the hearing officer's statement amounts to a finding that the Division was not negligent.

rived with a crew to fight the Martin fire. After reviewing the situation, Stiltner determined that the best method of fighting the fire would be to light "line fires" along the side of a roadway. The purpose of these line fires was to burn brush, grass, and other fuel between the Martin fire and the road, ultimately extinguishing the Martin fire before it could spread any farther. At 6:30 p.m., Stiltner determined that the line fires had created a sufficient buffer to control the Martin fire, and he and his crew left the Martin fire to fight another forest fire in the area.

On the evening of November 27, one of Robinson's neighbors called to tell him that a fire was coming behind his house. Robinson got up several times through the night to check on the status of the fire. By 5:00 a.m., Robinson noticed that the fire was getting "real close" to his house so he decided to stay home from work. At approximately 8:00 a.m., Robinson went outside and began trying to fight the fire by clearing a fire break. At approximately 1:00 p.m., some of Robinson's friends came to help him try to stop the fire from reaching his house and garage. They were able to save Robinson's house, but his garage and its contents, which consisted of a number of tools, automobile parts, and his mother's car, were destroyed.

The next day, Robinson walked the perimeter of the fire. Based on his observations, Robinson concluded that the fire that burned his garage was not the Martin fire, but was from the line fires set by the Division. Therefore, Robinson filed a petition for review before the Board seeking compensation from the Division for his damages. Robinson estimates that his damages, including the garage and its contents, are in excess of $80,000.00.

At the hearing on Robinson's claim, witnesses for Robinson testified that Division personnel set line fires on both sides of the road, not just on the side of the road closest to the Martin fire. Division personnel contradicted that testimony, and also testified that several of Robinson's neighbors set illegal line fires near their houses and that at least one arsonist was in the area lighting fires.

Following the hearing, the hearing officer recommended dismissal of Robinson's claim. In doing so, the hearing officer determined that the Division had immunity because its acts were discretionary, not ministerial. The Board adopted the hearing officer's recommendation and dismissed Robinson's claim.

Robinson then filed an appeal to the Pike Circuit Court. The court, after reviewing the record and the arguments of counsel, remanded this matter to the Board for additional findings regarding the issue of negligence by the Division. Although the court's order is not as straightforward as we might prefer and appears to interchange discretionary and ministerial, we believe the court found that the Division's decision regarding how to fight the fire, i.e. lighting line fires, was discretionary. It appears that the court went on to hold that, once the Division began to fight the fire by that method, the Division's actions became ministerial, subjecting the Division to potential liability for negligence. It is with that understanding in mind that we address the issues raised on appeal.

## STANDARD OF REVIEW

The Division argues that the Board's findings must be upheld if they are supported by substantial evidence. We agree as to the Board's findings of fact; however, the question of immunity is a matter of law which both the circuit court and this Court review *de novo*. *Rowan County v. Sloas*, 201 S.W.3d 469, 475 (Ky.2006); *Estate of Clark ex rel. Mitchell v. Daviess*

*County,* 105 S.W.3d 841, 844 (Ky.App. 2003). Therefore, we apply that standard herein.

## ANALYSIS

Kentucky Revised Statute (KRS) 44.073(2) provides that the Board has jurisdiction over claims involving "the negligent performance of ministerial acts" by the Commonwealth or its subdivisions. The parties agree that, if the Division was performing discretionary acts, it is immune from negligence actions; however, if it was performing ministerial acts, it is not immune. Furthermore, the parties agree that, in choosing to light line fires to fight the Martin fire, the Division was performing discretionary acts and is immune from claims of negligence for making that choice. However, Robinson asserts that the circuit court correctly determined that, once those line fires were lit, the acts of the Division became ministerial, thus subjecting the Division to potential liability for negligence. We disagree.

Determining what is ministerial and what is discretionary and where the line between the two lies is not a straightforward task. Based on our review, it appears that there are three types of cases: those involving purely ministerial actions; those involving purely discretionary actions; and those involving both ministerial and discretionary actions. We set forth examples of each below.

In *Collins v. Commonwealth of Ky. Natural Resources and Environmental Protection Cabinet,* 10 S.W.3d 122 (Ky.1999), a thirteen-year-old boy drowned in a flooded culvert on a strip mine site. The boy's mother sued the Natural Resources and Environmental Protection Cabinet (the NREPC) alleging that it had failed to inspect the culvert and to insure that it met regulatory specifications. The Court determined that the NREPC had statutory and regulatory duties to do so, which are ministerial acts. In so holding, the Court stated that

[t]o decide whether mine site inspection by [the NREPC's] employees is ministerial or discretionary, it is necessary to determine whether the acts involve policy-making decisions and significant judgment, or are merely routine duties. The statutes governing coal mining in Kentucky are straightforward. KRS 350.020 states that the purpose of KRS Chapter 350 is to regulate and control coal mining operations so as to minimize any injurious effects on the Commonwealth's citizens and resources. To this end, the [NREPC] is directed to enforce the law rigidly and to adopt whatever administrative regulations are necessary to accomplish the chapter's purposes. KRS 350.020. The [NREPC]'s surface coal mining inspectors are required to conduct inspections of coal mining operations and determine the existence of violations. KRS 350.050(5), KRS 350.130(1), KRS 350.465(3)(c). At the time of the accident, the acts required to be performed by the [NREPC] with regard to the drainage culvert were specifically defined by regulation. 405 KAR 1:120, *et seq.* required that all access and haul roads be constructed according to certain requirements. The regulations specifically required that water control structures for the roads be designed with a discharge capacity capable of passing the peak runoff from a 10–year, 24–hour precipitation event. 405 KAR 1:120, Section 3(2). The regulations also required that all culverts and other drainage structures serving haul roads not be restricted or blocked in any manner that impedes drainage. 405 KAR 1:120, Section 4(2).

Inspecting drainage culverts to assure they conform to these regulations does

not require any significant judgment, statutory interpretation, or policy-making decisions. Instead, these inspections require attention to specific details, such as whether the culvert is blocked and whether it is large enough to handle a specified amount of water. The regulations can be enforced in a routine, ministerial manner, and thus their negligent performance may be actionable under the Act.

*Id.* at 126.

Based on the preceding analysis, the Court determined that the NREPC's duties were ministerial and that it could be held liable for negligence.

In *Rowan County v. Sloas,* 201 S.W.3d 469 (Ky.2006), a prisoner, who was working on a road crew, was injured when struck by a falling tree. He filed a negligence suit in circuit court against, in pertinent part, the deputy jailer who was supervising the crew. With regard to whether the deputy jailer's supervisory duties were discretionary or ministerial, the court quoted *Franklin County, Ky. v. Malone,* 957 S.W.2d 195, 201 (Ky.1997) (*reversed on other grounds* by *Yanero v. Davis,* 65 S.W.3d 510 (Ky.2001)), for the proposition that a discretionary act is one that

> require[s] the exercise of reason in the adaptation of a means to an end, and discretion in determining how or whether the act shall be done or the course pursued. Discretion in the manner of the performance of an act arises when the act may be performed in one of two or more ways, either of which would be lawful, and where it is left to the will or judgment of the performer to determine in which way it shall be performed.

*Id.* at 477.

The Court then defined ministerial actions as "investigative responsibilities as set out in regulations, which *were particu-*

*lar in their directive." Id. (Citing Stratton v. Commonwealth,* 182 S.W.3d 516 (Ky.2006)) (emphasis in original).

Applying these precepts to Sloas's claims, the Court held that the deputy jailer's actions were discretionary, noting that he

> is in charge of this *crew.* He has to watch them, and try as best he can to anticipate what they might do, correct them as necessary, determine their capabilities, sometimes by asking them forthright whether they can or can't do the job, assign the duties and see that the work is performed. Work somewhat similar to work one would do around his house or farm, in cleaning brush or trees off a bank or out of a field. Work done this day with chainsaws. Chainsaws that you can buy in any hardware store, which many people operate and many of which have had "kickbacks." *One would imagine there are many other things you might think about while managing a work crew of six state prisoners,* but what has been set out is enough. It is as discretionary a task as one could envision. No school children, no college professors or academicians, but state prisoners on a highway with one deputy jailer.

*Id.* at 480 (emphasis in original).

Finally, in *Stratton v. Commonwealth,* 182 S.W.3d 516 (Ky.2006), a child died as a result of injuries inflicted by her mother's live-in boyfriend. The administrator of the child's estate brought an action in the Board against the Cabinet for Families and Children (CPS). The administrator alleged that CPS case workers were negligent in their investigation and handling of reports of abuse made prior to the child's death. The Court noted that a specific regulation set forth the duties CPS case workers had with regard to investigating

reports of abuse. Those regulations set forth which individuals had to be interviewed and whether the interviews had to be in person. However, the regulations did not mandate what actions case workers were required to take after completing an investigation.

In determining that the Cabinet workers' actions in this case were discretionary, the Court found as follows:

[I]n this instance, the CPS case workers are investigating allegations of abuse. Such investigations do have certain mandated statutory requirements as to who shall be interviewed, etc., but they also involve discretionary decisions by the case workers, just as in police investigations. After performing their ministerial duties, the case workers must determine what action, if any, should be taken to resolve each claim—which in this case was to remove the child from a potentially dangerous environment—which they did, even though they could not identify the perpetrator. All such discretionary functions are protected by the doctrine of governmental immunity and do not fall under the waiver outlined by the Board of Claims Act.

*Id.* at 521.

As previously noted, the preceding are illustrative of the three types of cases: purely ministerial, purely discretionary, and mixed. Based on these illustrative cases, it appears that an act is purely ministerial if statutes and/or regulations impose a clearly defined duty to perform an act, and the performance of the act requires little, if any, judgment, interpretation, or policy-making decisions. Thus, in *Collins,* the Court found that, to meet their statutory and regulatory duties, the NREPC employees were required to inspect culverts and to determine if those culverts met specified criteria. Doing so did not require, or even permit, the exer-

cise of independent judgment. Therefore, their duties were ministerial. 10 S.W.3d at 126.

However, when an actor must choose between or among various courses of action, and that choice involves the exercise of judgment and/or overriding policy issues, the act is discretionary. Thus, in *Sloas,* the Court held that, how to supervise a prisoner road crew is a discretionary act.

Finally, there are mixed cases, such as *Stratton,* that involve ministerial acts (interviewing specified people following receipt of a report of abuse) and discretionary acts (determining what actions to take after those interviews have been conducted). We believe that this matter is in this latter category.

In KRS 149.360, the legislature declared that it is the policy of the Commonwealth to "prevent loss of life and damage to property from wildfires and other conflagration." Thus, it appears that the Division operates under a mandate to prevent loss of life and damage to property from forest fires, a ministerial function. If the Division, after it received notice of a forest fire, did nothing to prevent such loss or damage, it arguably could have liability for failing to perform that ministerial function. Just as CPS could be held liable for failing to perform the mandatory investigation of child abuse, and the NREPC was held liable for failing to properly conduct mandatory strip mine site inspections. *See Stratton,* 182 S.W.3d 516; *Collins,* 10 S.W.3d 122.

However, the fighting of forest fires also requires a great deal of discretion. As the parties agree, choosing which method to use to fight a forest fire, i.e. a line fire, is a discretionary act. Once that method has been chosen, however, there are no mandated, straightforward, or routine steps to

be followed. As noted by the Division personnel who testified at the hearing, a forest fire is fluid in that it can change directions and jump barriers. Fire fighters, like the deputy jailer in *Sloas,* who had to anticipate as best he could the behavior of his prisoners, must anticipate as best they can, the behavior of fire. Because of the nature of forest fires, "one size fits all" procedures, such as those regarding investigations of child abuse in *Stratton,* are not in place and likely would not be appropriate.

In this case, after setting the line fires and fighting the fire for approximately six hours, Division personnel determined the line fire was holding and the Martin fire had been contained. As noted by the Court in *Sloas,* this "is as discretionary a task as one could envision." 201 S.W.3d at 480. Therefore, we hold that, while the Division had the ministerial duty to fight the Martin fire, the methods used to fight that fire, including the determinations that the Martin fire had been contained and that it was appropriate to leave the area, were discretionary. Therefore, we reverse the circuit court's finding that the Division may be subject to liability for negligence.

Based on the preceding, we need not address whether the Board made a finding regarding negligence and the Division's argument on that issue.

### CONCLUSION

For the foregoing reasons, we reverse the circuit court and remand this matter to the court for reinstatement of the Board's final order.

ALL CONCUR.